140 A.3d 639

**In re Nomination Petition of Joseph VODVARKA as a Candidate of the Democratic Party for the United States Senate in the Primary Election of April 26, 2016.**

**Appeal of Joseph Vodvarka.**

Supreme Court of Pennsylvania.

Submitted April 11, 2016.

Decided April 19, 2016.

Opinion Filed June 23, 2016.

18

———

Kathleen Marie Kotula, Esq., Pennsylvania Department of State, for Kathleen M. Kotula.

Paul Anthony Rossi, Esq., for Joseph Vodvarka.

Robert McCarthy Palumbos, Esq., Philadelphia, James Manly Parks, Esq., Duane Morris, L.L.P., for Joseph A. Sestak, Jr.

SAYLOR, C.J., BAER, TODD, DONOHUE, DOUGHERTY, WECHT, JJ.

## OPINION

Justice DONOHUE.

 Joseph Vodvarka ("Candidate") appeals from the divided en banc decision of the Commonwealth Court, which set aside his nomination petition as a candidate of the Democratic Party for the United States Senate in the primary election held on April 26, 2016. By order dated April 19, 2016, we reversed the decision of the Commonwealth Court and ordered that the Candidate be placed on the election ballot. For the reasons set forth herein, we conclude that the signature of a registered voter whose name appears in the SURE[1] regis-

---

1. SURE is the acronym for the Statewide Uniform Registry of Electors. 25 Pa.C.S.A. § 1222. The SURE system allows for electronic searching for registered voters by name and party, and permits a signature to be retrieved for comparison to confirm registration status without the need to input an address. An individual who signs a nominating petition can be identified in the SURE system by first and last name, and his or her

try may not be stricken from a nominating petition solely because the address set forth on the nominating petition is different from the address at which the signer is currently registered to vote.

The facts in this case are not disputed. On February 16, 2016, Candidate filed a nominating petition, containing 2744 signatures, to be a candidate for the nomination of the Democratic Party for the office of United States Senator. On February 23, 2016, Joseph A. Sestak ("Objector") filed a timely petition to set aside the nominating petition, alleging that the nominating petition did not contain at least 2000 valid signatures of registered Pennsylvania Democrats as required by 25 P.S. § 2872.1(2). The Commonwealth Court ordered representatives of the parties to meet at the Lancaster County Board of Elections to review the signatures on the nominating petition. On March 11, 2016, the parties struck certain signatures by agreement, leaving 2186 signatures remaining. The parties then entered into a stipulation, agreeing that 461 signatures contained a name and signature matching that of a person registered to vote in the county, but the address on the nominating petition did not match the address of record in the Commonwealth's SURE registry for the individual of that name.[2] The parties further stipulated that whether these 461 signatures should be struck presents a "common and singular question of law" determinative of Objector's challenge.[3]

Before the Commonwealth Court, Objector contended that the 461 signatures in question must be stricken pursuant to this Court's 2001 decision in *In re Nomination Petition of Flaherty*, 564 Pa. 671, 770 A.2d 327 (2001), and its progeny,

identity and registration status can be confirmed by matching the elector's signature with the signature in the SURE system.

**2.** Such signatures are often referred to as "NRA entries," designating that they are "*n*ot *r*egistered at the *a*ddress" set forth on the nominating petition.

**3.** Objector also filed a challenge to 220 signatures because the municipality recorded on Candidate's nomination petition did not match the municipality on file for the voter in the SURE system. The Commonwealth Court rejected these challenges and Objector has not appealed that determination.

including *In re Nomination Papers of Nader*, 580 Pa. 22, 858 A.2d 1167 (2004), *In re Nomination Petition of Gales*, 618 Pa. 93, 54 A.3d 855 (2012), and *In re Lunny*, 615 Pa. 460, 44 A.3d 1 (2012) (per curiam), *rev'g In re Nomination Petition of Lunny*, 170 M.D. 2012 (Pa.Commw., April 5, 2012) (unpublished memorandum). In *Flaherty*, this Court, relying on a prior analysis of Pennsylvania's statutory registration requirements in *In re Nomination Petition of Wesley*, 536 Pa. 609, 640 A.2d 1247 (1994), held that "absent extraordinary circumstances," a signature on a nominating petition must be stricken if the address accompanying the signature does not match the address at which the elector is currently registered, unless at the time of signing, a removal notice had been filed notifying election officials of the change of address. *Flaherty*, 770 A.2d at 333.

The Commonwealth Court first reviewed this Court's decisions in *Flaherty, Nader, Gales* and *Lunny*, concluding that "it is for our Supreme Court to overrule that line of cases." *In re Nomination Petition of Vodvarka*, 135 A.3d 246, 261 (Pa.Commw.2016) (hereinafter, *"Vodvarka II"*). The Commonwealth Court also reviewed its own more recent decisions on this issue, including a 2010 case involving the same two parties involved in the present appeal. *See In re Nomination Petition of Vodvarka*, 994 A.2d 25 (Pa.Commw.2010) (*"Vodvarka I"*). Citing to this Court's "continued adherence to *Flaherty,* including in *Nader, Gales* and *Lunny*," the Commonwealth Court decided that it had to strike the 461 signatures identified in the parties' stipulation and rule in favor of Objector.

Until the Supreme Court [overrules *Flaherty* and *Nader,*] we will continue to apply those cases as [this court] did in [*Vodvarka I* ] and the many cases applying [*Vodvarka I* ]. As such, we reiterate the presumption that a signature on a nomination petition is valid, and an objector has the burden of proving defects in a nomination petition. An objector may prove a defect by showing that an individual's address on the petition does not match the address in the voter registration records. At that point, the burden shifts to the

candidate to produce evidence to show why the signature should not be stricken—i.e., that extraordinary circumstances existed.

*Vodvarka II*, 135 A.3d 246, 261–62.

 Herein, we address the "common and singular question of law" framed by the parties in their stipulation. This Court may only reverse a Commonwealth Court's order concerning the validity of challenges to a nomination petition if the Commonwealth Court's findings of fact are not supported by substantial evidence in the record, there was an abuse of discretion, or there was an error of law. *See In re Nomination Petition of Driscoll*, 577 Pa. 501, 847 A.2d 44, 49 (2004). We must be mindful of the established public policy in this Commonwealth to protect the elective franchise, and thus, the Pennsylvania Election Code [4] must "be liberally construed to protect a candidate's right to run for office and the voters' right to elect the candidate of their choice." *Weiskerger Appeal*, 447 Pa. 418, 290 A.2d 108, 109 (1972). Nomination petitions are presumed to be valid and an objector has the burden of proving that a nomination petition is invalid. *Driscoll*, 847 A.2d at 49. The placement of this burden on an objector recognizes that there is a presumption that the signatures on a petition are valid. *In re Creighton*, 899 A.2d 1166, 1168 (Pa.Commw.), *aff'd per curiam*, 586 Pa. 652, 896 A.2d 583 (2006).

Section 2868 of the Election Code, which governs the collection of signatures on a nomination petition,[5] provides, in pertinent part, as follows:

4. 25 P.S. §§ 2600–3571 ("Election Code").

5. Section 2868 applies to "nominating petitions," which must be filed for a candidate to be placed on the ballot in primary elections of the major political parties (as defined in 25 P.S. § 2831). In contrast, section 2911 of the Election Code provides for the nomination of candidates for public office who were not members of a major political party within thirty days of the primary election. 25 P.S. § 2911. Section 2911, unlike section 2868, does not expressly require each signer to be a registered voter. *Id.* Nevertheless, the Commonwealth Court has held that to be a "qualified elector" under section 2911, the signer must be registered to vote. *In re Nominating Papers of Rogers*, 908 A.2d 942, 946 (Pa.Commw.2006) ("[W]e conclude that, under

### § 2868. Manner of signing nomination petitions; time of circulating

Each signer of a nomination petition shall sign but one such petition for each office to be filled, and shall declare therein that he is a registered and enrolled member of the party designated in such petition: Provided, however, That where there are to be elected two or more persons to the same office, each signer may sign petitions for as many candidates for such office as, and no more than, he could vote for at the succeeding election. He shall also declare therein that he is a qualified elector of the county therein named, and in case the nomination is not to be made or candidates are not to be elected by the electors of the State at large, of the political district therein named, in which the nomination is to be made or the election is to be held. He shall add his residence, giving city, borough or township, with street and number, if any, and shall legibly print his name and add the date of signing, expressed in words or numbers. . . .

25 P.S. § 2868.

Our present task requires us to determine whether the 461 individuals whose signatures are challenged, all of whom continued to reside in the named county but not at the same address as the one listed in the Commonwealth's SURE registry, satisfied the requirements of Section 2868. The Election Code defines the term "qualified elector" as "any person who shall possess all of the qualifications for voting now or hereafter prescribed by the Constitution of this Com-

[section 2911], persons signing a candidate's nomination papers must be a registered voter."); *see also Rogers v. Corbett*, 468 F.3d 188, 191 (3d Cir.2006); *but see In re Nomination of Nader*, 860 A.2d 1, 580 A.2d 134, 143 (2004) (Saylor, J., dissenting) (stating that the registration requirement "simply does not exist for signers and affiants relative to nomination papers for an independent political body"). A federal court recently held that requiring individuals signing nominating papers to be registered to vote does not violate First Amendment protections. *Green Party of Pennsylvania v. Aichele*, 89 F.Supp.3d 723, 751 (E.D.Pa.2015) (ruling that Pennsylvania has "a compelling interest in requiring registration to vote as the only means by which a nomination paper signature can be readily compared with the voter's registration in the event of an objection").

monwealth,[6] or who, being otherwise qualified by continued residence in his election district, shall obtain such qualifications before the next ensuing election." 25 P.S. § 2602(t); *see also* 25 P.S. § 2811 ("Qualifications of Electors"). The phrase "registered and enrolled member of a political party" is defined as "any qualified elector who shall be registered according to political designation, in accordance with the provisions of the registration act." 25 P.S. § 2602(u). Voter registration is presently governed by Part IV of Title 25 (relating to elections) of the Pennsylvania Consolidated Statutes. *See* 25 Pa.C.S.A. §§ 1101–3302 (hereinafter, "Act 2002–3").

Accordingly, to sign Candidate's nominating petition in accordance with section 2868, the 461 individuals at issue here each had to declare (1) that he or she was a "qualified elector of the county"[7] designated on the nominating petition, and (2) that he or she was a registered voter of the party for which the candidate seeks the nomination. 25 P.S. § 2868. Each signer also had to state his or her residence (giving city,

6. Article VII, Section 1 of the Pennsylvania Constitution provides:
 Every citizen 21 years of age [lowered to 18 years of age by the twenty-sixth amendment to the United States Constitution], possessing the following qualifications, shall be entitled to vote at all elections subject, however, to such laws requiring and regulating the registration of electors as the General Assembly may enact.
 1. He or she shall have been a citizen of the United States at least one month.
 2. He or she shall have resided in the State 90 days immediately preceding the election.
 3. He or she shall have resided in the election district where he or she shall offer to vote at least 60 days immediately preceding the election, except that if qualified to vote in an election district prior to removal of residence, he or she may, if a resident of Pennsylvania, vote in the election district from which he or she removed his or her residence within 60 days preceding the election.
 PA. CONST. art. VII, § 1.
 The parties have not raised any issues relating to the 461 challenged signers' status as "qualified electors" pursuant to the constitutional requirements in Article VII, Section 1 (or the related statutory requirements in section 2811 of the Election Code), and thus we likewise will not address any such issues.

7. Because the primary election at issue here is for nomination to an office by the electors of the State at large, electors on Candidate's nominating petition did not need to declare that they were qualified electors of a particular political district. 25 P.S. § 2868.

24

borough or township, with street and number, if any), print and sign his or her name, and add the date of signing. *Id.* The present case requires that we focus on whether the 461 individuals who signed Candidate's nominating petition were registered to vote, and whether the signers' inclusion of an address on the nominating petition other than the one currently in the SURE registry made the signatures invalid.

Reviewing the relevant statutes, no provision either in the Election Code or in Act 2002–3 mandates that the address provided on a nominating petition must match the address in the SURE system. Section 2868 of the Election Code does not require the signer of a nominating petition to state the address at which he or she resided at the time of that voter's registration. Instead, section 2868 requires only that he or she "add his residence, giving city, borough or township, with street and number, if any." 25 P.S. § 2868. Similarly, Act 2002–3 affirmatively provides that a registered elector's change of address, even if not promptly reported to election officials, does not affect his or her registration status or entitlement to vote in the next election, 25 Pa.C.S.A. §§ 1501(b)(2), 1901(d), 1902. No provision in Act 2002–3 states, or even suggests, that a change of address renders an elector ineligible to sign a nominating petition. Finally, no clear policy basis exists to support a matching address requirement, as the Election Code and Act 2002–3 should be read, to the extent possible, to **include** rather than **exclude** citizens in the electoral process, including the process of selecting potential candidates for office through the signing of nominating petitions. *See Weiskerger Appeal,* 290 A.2d at 109.

For these reasons, and based upon the stipulation of the parties that all 461 individuals who signed Candidate's nominating petition were qualified electors and registered Democrats of the county designated on the nominating petition, if we were deciding this case on a clean slate, we would promptly reverse the decision of the Commonwealth Court. As the Commonwealth Court recognized, however, this case is not being decided on a clean slate, as the matching address

requirement perseveres as a result of this Court's 2001 opinion in *Flaherty*. *Vodvarka II*, 135 A.3d 246, 261. Our decision in *Flaherty* was based upon the application of now-repealed voter registration legislation, specifically, the Pennsylvania Voter Registration Act, 25 P.S. §§ 961.101–961.5109 (repealed) (hereinafter, the "1995 PVRA"). Act 2002–3, which repealed the 1995 PVRA, was primarily intended to be merely a codification of the legislation it replaced, with only minor language and definitional changes. *See* Act 2002–3 (Historical and Statutory Notes). Accordingly, *Flaherty* 's matching address requirement for nominating petitions was based upon this Court's application of voter registration laws substantially similar to those in effect today (in Act 2002–3), and thus necessitates our attention herein.

To determine whether *Flaherty* remains controlling law, we must review the law extant at the time of that decision, beginning with our 1994 ruling in *Wesley*. In that case, Dennis Hinton ("Hinton") was a circulator[8] of signatures on the nominating petition of Dennis Wesley, who sought the nomination of the Democratic Party in the May 1994 primary election for United States Congress in the first congressional district. The issue presented was whether Hinton was a qualified elector and registered voter in Philadelphia County when he signed the circulator affidavits. *Wesley*, 640 A.2d at 1248. Hinton registered to vote in September 1991, listing his address as 600 E. Church Lane, Apt 8–D, in Philadelphia. He registered to vote again on March 2, 1994, this time under a new name (Salim Azim) that he had subsequently adopted for religious reasons. *Id.* When registering in March 1994, Azim (a/k/a Hinton) listed his address as 5230 Pulaski Street, also in Philadelphia, and stated that he had moved to this new address approximately one and one-half to two years ago. *Id.* at 1250. Because Azim (a/k/a Hinton) had signed the circula-

8. In 1994, a circulator of a nominating petition was required to be a registered member of the party and a resident of the relevant political district. 25 P.S. § 2869. Residency requirements for circulators have since been ruled unconstitutional as violative of the First Amendment to the United States Constitution. *In re Stevenson*, 615 Pa. 50, 40 A.3d 1212 (2012) (recognizing that *Morrill v. Weaver*, 224 F.Supp.2d 882 (E.D.Pa.2002), is binding in this Commonwealth).

tor affidavits on February 28, 1994, two days before submission of his second voter registration on March 2, 1994, Azim's registration status in Philadelphia County depended upon the status of his first (September 1991) registration. *Id.* at 1249–50.

This Court affirmed the Commonwealth Court's decision that Azim (a/k/a Hinton) was not a registered elector at the time he signed the circulator affidavits. We determined that Hinton's failure to file a removal notice promptly advising election officials of his move from 600 E. Church Lane, Apt 8–D to 5230 Pulaski Street had resulted in the termination of his September 1991 voter registration:

> At the time that a person registers as an elector, he must specifically set forth, under penalty of perjury, information pertaining to his place of residence. The registration process requires that the applicant indicate the street and number of his residence; the location or number of the room, apartment, flat, or floor that he occupies if his residence is a portion only of the house; and the length of his residence in the State or district. 25 P.S. § 623–20(c)(4)–(6); *see also* 25 P.S. § 623–20.3(b)(4)–(7). Moreover, the Election Code provides that the registration commission shall send inspectors to conduct street canvasses in order to verify the residence of those registered. 25 P.S. § 623–20.4(f). Clearly, this inspection is intended to maintain the integrity of the election process by insuring that the qualified elector actually resides at the address listed on his voter registration. Absent extraordinary circumstances, a removal notice is required to be filed whenever a qualified elector changes his residence so that his new address comports with the sworn information maintained by the registration commission. *See* 25 P.S. §§ 623–21, –24, –28, –29. Accordingly, the Commonwealth Court correctly concluded that Azim's voter registration terminated as a result of his failure to file a removal notice indicating his change of residence.

*Id.* at 1250. The statutory citations in this excerpt were to the First Class City Permanent Registration Act, 25 P.S. §§ 623–

1–623–46 (repealed), then in effect for elections in Philadelphia. The specific provisions cited included section 623–28, which precluded an elector from voting in the next election if he or she had changed addresses but not filed a removal notice within thirty days of said election; and section 623–20.4(f), which permitted election commissions to conduct neighborhood canvassing to cancel the voter registration of anyone not residing at the address listed on his or her voter registration card. *See also* 25 P.S. § 623–33 (permitting cancellation of voter registrations for failure to respond to a notice sent to individuals identified during canvassing).

Six years after *Wesley,* this Court decided *Flaherty.* In *Flaherty,* Mary *Flaherty* filed a nomination petition for the Democratic nomination for Judge of the Commonwealth Court, a position requiring at least 1000 valid signatures, including 100 from each of at least five counties. 25 P.S. § 2872.1(10). As a result of challenges to numerous signatures, an objector contended that Flaherty did not satisfy the requirement of at least 100 signatures from each of five counties, including, in particular, the signatures submitted from Erie and Philadelphia Counties. *Flaherty,* 770 A.2d at 329–30. Of importance for present purposes, the objector challenged the signatures of seven electors from Erie County and nine electors from Philadelphia County on the grounds that the addresses of these sixteen electors on the nominating petition did not match the address stated on their voter registration cards. *Id.* at 333.

In ruling that the lack of matching addresses constituted grounds to strike the sixteen signatures, this Court in *Flaherty* reaffirmed its reasoning in *Wesley,* namely that the failure to timely file a removal notice within thirty days of an election results in the termination of that elector's voter registration. *Id.* at 333–34. While replacing *Wesley*'s statutory citations with counterparts in the subsequently enacted 1995 PVRA, this Court in *Flaherty* nevertheless retained the rationale espoused in *Wesley,* citing repeatedly to *Wesley* and a Commonwealth Court case [9] that followed *Wesley:*

9. *In re Pittsburgh Home Rule Charter,* 694 A.2d 1128 (Pa.Commw.1997)

28

A person is required to indicate, under penalty of perjury, his or her place of residence in order to register as an elector. 25 P.S. § 961.501. Furthermore, when electors move either within the same county or to another county within the Commonwealth, they must notify the registration commission of their new address by filing a removal notice generally no later than 30 days preceding an election. 25 P.S. §§ 961.901–961.902. Indeed, the registration commission must verify the residences of registered electors to insure that the qualified elector actually resides at the address listed on his voter registration card. 25 P.S. §§ 961.906–961.907; *In re Nomination Petition of Wesley*, 536 Pa. at 615, 640 A.2d at 1249; *In re Pittsburgh Home Rule Charter*, 694 A.2d 1128, 1131–32 (Pa.Commw.1997). Thus, absent extraordinary circumstances, electors who declare a residence at an address different than the address listed on their voter registration card are not qualified electors at the time they sign a nomination petition unless they have completed the removal notice required by the Voter Registration Act. [*Wesley*], 536 Pa. at 612–14, 640 A.2d at 1249; *In re Pittsburgh Home Rule Charter*, 694 A.2d at 1131–32.

\* \* \*

[B]oth this Court and the Commonwealth Court have issued decisions ... that have found that electors must notify authorities of a change in address in order to remain a qualified elector. *In re Wesley*, 536 Pa. at 615, 640 A.2d at 1247; *In re City of Pittsburgh Home Rule Charter*, 694 A.2d at 1132. Where electors fail to properly notify authorities of a change in address, those electors' voter registrations are terminated and thus, they are clearly disqualified from signing a nomination petition as a registered and enrolled elector. 25 P.S. § 2868; *In re Wesley*, 536 Pa. at 615, 640 A.2d at 1247; *In re City of Pittsburgh Home Rule Charter*, 694 A.2d at 1132.

*Id.* at 333–34. As in *Wesley*, the statutory provisions cited in *Flaherty* included the requirement to file a removal notice within thirty days of an election (sections 961.901 and 961.902),

and the provisions authorizing, inter alia, neighborhood canvassing to identify registered voters who no longer resided at the address listed on their registration card (sections 961.906 and 961.907).

In both *Wesley* and *Flaherty*, the Court directed its attention to whether the signer was, at the time of signing, registered to vote in the election for which the nomination was sought, and looked to compliance with voter registration requirements under the then-applicable voter registration legislation to make that determination. In both cases, this Court concluded that the signers in question had not filed removal notices in accordance with statutory requirements, and thus, their voter registrations had been terminated and they were not registered voters at the time of signing.[10]

This Court's 1994 decision and rationale in *Wesley* was supported by statutory authority. In 1994, the voter registration acts then in effect were the First Class City Permanent Registration Act, 25 P.S. §§ 623–1–623–46 (repealed), and the Permanent Registration Act for Cities of the Second Class, Third Class, and Boroughs, Towns, and Townships, 25 P.S. §§ 951–1–951–46 (repealed), both of which were originally enacted in 1937 (hereinafter, collectively, the "1937 PRAs"). The 1937 PRAs required an elector changing addresses to file

10. In both cases, this Court erroneously confused electors who were **qualified** to vote with electors who were **registered** to vote. *Wesley*, 640 A.2d at 1250 ("A circulator of a nomination petition must be a duly registered member of the relevant political district.... [T]he failure of a circulator to be a qualified elector is a fatal defect to those petitions filed by that circulator."); *Flaherty*, 770 A.2d at 333 ("[E]lectors must notify authorities of a change in address in order to remain a qualified elector.").

Pursuant to Article VII, Section 1 of the Pennsylvania Constitution (*see supra* n. 6), a person is qualified to vote if they meet the three constitutional qualifications (age, citizenship and residency) in subsections 1, 2, and 3. PA. CONST. art. VII, § 1. A qualified elector may register to vote by satisfying legislatively-enacted voter registration requirements. *See In re Nomination of Nader*, 580 Pa. 134, 138–39, 860 A.2d 1 (2004) (Saylor, J., dissenting). As explained hereinabove, section 2868 imposes two separate requirements to sign a nominating petition: the signer must be a "qualified elector of the county," and a "registered and enrolled member of the party" for which the candidate seeks the nomination. 25 P.S. § 2868. A person may remain qualified to vote even if his or her registration has been cancelled.

a removal notice at least thirty days prior to a primary, general or municipal election in order to vote in that election.[11] 25 P.S. §§ 623–28; 951–26. While not automatic, the failure to file a removal notice could result in the speedy cancellation of the voter's registration. The 1937 PRAs contained multiple provisions permitting the systematic purging of voter registration registries, including through neighborhood canvassing and "check-ups of registers." Neighborhood canvassing permitted election commissions to direct individual commissioners (or appointed "inspectors of registration") to canvass the buildings in their district, and to leave notices at every residence where the elector could not be found. 25 P.S. §§ 623–33, 951–31. Similarly, registry check-ups permitted election commissions to send notices requesting address verification to electors at the addresses on their registration cards, and required that notices be sent to all electors who had not voted within the past two calendar years. 25 P.S. §§ 623–32, 623–40, 951–30, 951–38. If the voter did not respond immediately to these notices (in all instances, within thirty days), the 1937 PRAs required the election commission to cancel the voter's registration.[12] *Id.*

*Flaherty's* reliance in 2001 on *Wesley* and its rationale was in error. In the years between *Wesley* and *Flaherty*, Pennsylvania's voter registration laws changed significantly. The impetus for this change was the enactment of the National Voter Registration Act, 52 U.S.C.A. §§ 20501–20511 (hereinafter, the "NVRA") in 1993 (effective January 1, 1995). The NVRA set forth a series of new requirements for voter

11. The only exception to this rule was if a non-Philadelphia voter moved from one address to another within the same election district (a precinct within a second or third class city or a borough, town, or township). 25 P.S. § 951–26(b). In this limited circumstance, the change of address did not require transfer of the registration card from one precinct to another.

12. In addition to canvassing and check-ups, the 1937 PRAs also authorized election commissions to request information from public utility companies (electricity, gas, water, or steam) regarding customers who had terminated service, and to send notices to those electors. 25 P.S. § 951–29. Notices could also be sent based upon information set forth in periodic reports received from real estate brokers and rental agents identifying individuals who had moved from their prior residence. *Id.*

registration for elections for federal office, with the stated purposes of, inter alia, increasing the number of citizens eligible to vote in federal elections and to maintain accurate and current voter registration rolls for such elections. 52 U.S.C.A. § 20501. Of specific relevance to the question presented in this case, section 8 of the NVRA prohibits states from removing the name of any registered voter from a voter registry list based upon a change of address unless either (1) the registrant confirms in writing that he or she has moved to an address outside of the registrar's jurisdiction, or (2) he or she failed to respond to a notice and does not vote in the next two general federal elections (a minimum of four years). 52 U.S.C.A. § 20507(b)(2), (d), (f). Also of importance here, the NVRA requires states to permit an elector to vote even if he or she failed to notify the registrar of a change of address prior to the date of the election. 52 U.S.C.A. § 20507(e). The elector may vote upon providing oral or written affirmation of the change of address to an election official. *Id.*

These provisions of the NVRA were clearly inconsistent with their counterparts in the 1937 PRAs. In *Association of Community Organizations for Reform Now (ACORN) v. Ridge,* 1995 WL 136913 (E.D.Pa. March 30, 1995), a suit challenging Pennsylvania's lack of compliance with the NVRA, the Commonwealth agreed to a series of stipulations regarding inconsistencies between the NVRA and the 1937 PRAs. One such stipulation was that, unlike under section 8 of the NVRA, in Pennsylvania, "voters who move within a county are not allowed to vote on the day of election unless they have re-registered or filed a removal notice with the registrar regarding the change thirty days before the election, or have moved within thirty days of the election." *Id.* at *5. The federal district court found, as a matter of law, that "the provisions of Pennsylvania law for voters who move in the same county are contrary to the [NVRA]." *Id.* at *9.

Because the NVRA applies only to federal elections, Pennsylvania remained free to continue to follow the 1937 PRAs in elections for state and local offices. To do so, however, would have created substantial administrative and financial challenges, as it would have required election commissions in

Pennsylvania to maintain separate voter registries for two different electorates (one for federal elections and a second for state and local elections). *See Welker v. Clarke,* 239 F.3d 596, 599 (3d Cir.2001). Accordingly, in June 1995, this Commonwealth enacted the 1995 PVRA, which adopted the voter registration requirements in the NVRA, thus permitting the state to maintain a single voter registry for all elections (federal, state, and local). *See Kuznik v. Westmoreland County Board of Commissioners,* 588 Pa. 95, 902 A.2d 476, 490–92 (2006) (the Election Code provides a unitary election system for federal and state offices and procedures for voting in state elections are to conform to federal requirements in order to prevent separate federal and state voting systems).

The 1995 PVRA repealed the 1937 PRAs,[13] but it carried over some provisions in a modified form. For example, the 1995 PVRA retained the requirement in the 1937 PRAs to file a removal notice within thirty days of an election, but added a new provision permitting the elector to vote at his or her former polling place even if he or she had not complied:

> An elector who removes residence from one place to another within the same county and who has not yet filed a removal notice with the commission shall be permitted to vote once at the elector's former polling place following removal if, at the time of signing the voter's certificate, the elector files with the judge of election a signed removal notice properly filled out. . . .

25 P.S. § 961.901(b)(2). Moreover, section 1902 of the 1995 PVRA permitted voters who had moved within a county, or to another county in the state, to vote at his or her former polling place merely by providing "written affirmation . . . of the new address before an election official. . . ." 25 P.S. § 961.1902.

In sections 961.906 through 961.912, the 1995 PVRA carried over the provisions in the 1937 PRAs permitting the systematic cancellation of voter registrations (including registry "check-ups" and neighborhood canvassing). 25 P.S. § 961.906 ("Checkup of registers"); 25 P.S. § 961.907 ("Canvass of

13. 25 P.S. § 961.5106(a).

registered electors"); 25 P.S. § 961.910 ("Failure to vote"). In section 961.5103(a), however, the 1995 PVRA gave the Secretary of the Commonwealth the power to suspend these sections upon a determination that they were inconsistent with the requirements of the NVRA. 25 P.S. § 961.5103(a).[14] On July 15, 1995, fifteen days after enactment of the 1995 PVRA, the Secretary of the Commonwealth, by notice published in the Pennsylvania Bulletin, suspended sections 961.906 through 961.912 "for all elections." 25 *Pennsylvania Bulletin* 2844 (July 15, 1995).

Upon suspension of these carryover provisions, Chapter 19 of the 1995 PVRA became effective. 25 P.S. § 961.5103(b). Chapter 19 of the 1995 PVRA, entitled "Provisions Contingent on Federal Law," adopted the fundamental requirements of section 8 of the NVRA. Of significance here, while section 961.1901(a)(4) permitted election commissions to conduct "voter removal programs" to the extent consistent with the NVRA,[15] pursuant to section 961.1901(d)(1), a change of address could not result in the cancellation of a voter's registration except in specifically limited circumstances:

14. Section 961.5103, entitled "Applicability of Provisions," provided as follows:

> (a) **Suspension**—To the extent that the Secretary of the Commonwealth determines that the [NVRA] prohibits the cancellation of registration for elections for Federal office because of a failure to vote as provided in section [961.910], the provisions of sections 906 through 912 are suspended. The suspension shall become effective upon publication of notice of the determination in the Pennsylvania Bulletin."
> (b) **Effect on Chapter 19**—Should the provisions of sections 906 through 912 be suspended as provided in subsection (a), the provisions of Chapter 19 shall be effective during the period of suspension."
>
> 25 P.S. § 961.5103.

15. Subsection 961.1901(b)(1) established a national change of address system, pursuant to which information provided by the United States Postal Service was used to ascertain possible changes of address and generate confirmation mailings pursuant to which the elector may verify or correct address information. 25 P.S. § 961.1901(b)(1). Subsection 961.1901(b)(2) permitted neighborhood canvassing to identify possible changes of address. 25 P.S. § 961.1901(b)(2). Section 961.1901(b)(3) permitted an election commission to send a notice to

**(d) Cancellation of registration.—**

(1) A commission shall not cancel the registration of an elector on the ground that the elector has changed residence unless any of the following apply:

(i) The elector confirms in writing that the elector has changed residence to a location outside the county in which the elector is registered.

(ii) The elector:

(A) has failed to respond to a notice described in paragraph (2); and

(B) has not voted nor appeared to vote and, if necessary, corrected the commission's record of the elector's address, in an election during the period beginning on the date of the notice and ending on the day after the date of the second general election for Federal office that occurs after the date of the notice.

25 P.S. § 961.1901(d)(1).

Unfortunately, in *Flaherty*, this Court failed to identify the changes to Pennsylvania's voter registration laws occasioned by enactment of the 1995 PVRA. Unlike under the 1937 PRAs in effect when we decided *Wesley*, under the 1995 PVRA, the failure to file a removal notice could no longer result in swift termination of a voter's registration, as receipt of a notice

any elector who had not voted for the past five years. 25 P.S. § 961.1901(b)(3).

Incongruously, and probably mistakenly, section 961.1901(b) retained a provision from the 1937 PRAs permitting the immediate cancellation of a voter's registration if he or she failed to respond, within seven to fifteen days, to a notice left during neighborhood canvassing. 25 P.S. § 961.1901(b)(2)(iii). This provision was identical to section 961.907, which (as noted hereinabove) was suspended by the Secretary of the Commonwealth in July 1995. 25 *Pennsylvania Bulletin* 2844 (July 15, 1995); 25 P.S. § 961.5103(a). This provision was also inconsistent with section 961.1901(b)(4), which permitted the immediate cancellation of a voter's registration only at the request of the elector or upon confirmation of the elector's death. 25 P.S. § 961.1901(b)(4). In any event, the effect, if any, of section 961.1901(b)(2)(iii) was blunted entirely, since, as discussed supra, under both section 8 of the NVRA and section 961.1901(d)(1) of the 1995 PVRA, the cancellation of a voter's registration based upon a change of address was severely circumscribed. *See* 52 U.S.C.A. § 20507(b)(2), (d), (f); 25 P.S. § 961.1901(d)(1), 1902.

from an election commission could result in registration cancellation only if the voter did not respond to the notice and failed to appear and vote in the next two general federal elections (a period of at least four years). 25 P.S. § 961.1901(d)(1). Moreover, also unlike the 1937 PRAs, under the 1995 PVRA, the failure to file a removal notice thirty days in advance of an election did not preclude the elector from appearing at his or her former polling place and voting in that election—dispelling any notion that the failure to file a removal notice resulted in the termination of the voter's registration (since the elector would not be entitled to vote if not still registered). 25 P.S. §§ 961.901(b)(2), 1902. Finally, our citation in *Flaherty* to sections 961.906 and 961.907 of the 1995 PVRA did not provide the intended support for the stated termination rationale, as the Secretary of the Commonwealth had suspended these provisions in accordance with her legislative authority. 25 P.S. § 961.5103(a); 25 *Pennsylvania Bulletin* 2844 (July 15, 1995).

For these reasons, we conclude that *Flaherty* must be overturned to the extent that it imposes a matching address requirement in connection with signatures on a nominating petition. To the extent (if any) that our subsequent decisions in *Nader* and *Gales* are inconsistent with the present decision, they are also overturned.[16]

As indicated hereinabove, in 2002, the General Assembly repealed the 1995 PVRA and re-enacted it substantially intact as Act 2002–3. As was the case with the 1995 PVRA, Act 2002–3 retains the provisions from the 1937 PRAs permitting the cancellation of voter registrations pursuant to, inter alia, registry "check-ups" and neighborhood canvassing. 25 P.S. §§ 1506–1512. As was also the case with the 1995 PVRA, section 1513(a) of Act 2002–3 gave the Secretary of the Commonwealth the power to suspend these sections upon a determination that they were inconsistent with the require-

16. *See also In re Lunny,* 615 Pa. 460, 44 A.3d 1 (2012) (per curiam), *rev'g In re Nomination Petition of Lunny* (Pa.Cmwlth., No. 170 M.D. 2012, filed April 5, 2012). As a per curiam order, *Lunny* had no stare decisis effect. *See Commonwealth v. Thompson,* 604 Pa. 198, 985 A.2d 928, 938 (2009).

ments of the NVRA. 25 Pa.C.S.A. § 1513(a). On March 17, 2002, the effective date of Act 2002–3, by notice published in the Pennsylvania Bulletin, the Secretary of the Commonwealth suspended sections 1506 through 1512 of Act 2002–3. 32 *Pennsylvania Bulletin* 1360 (March 17, 2002).[17]

As a result, Chapter 19 of Act 2002–3, which contains only minor variations from Chapter 19 of the 1995 PVRA, is currently in effect. 25 Pa.C.S.A. § 1513(a). Sections 1501(b)(2) and 1902 permit an elector to appear at his former polling place and vote even if he or she did not file a removal notice in advance of the election. 25 Pa.C.S.A. §§ 1501(b)(2), 1902. Section 1901(a)(4) requires that programs designed to remove electors from voter registries must comply with the NVRA, and section 1901(d)(1) provides that a voter's registration may not be cancelled unless the registrant confirms in writing that he or she has moved to an address outside of the registrar's jurisdiction, or he or she failed to respond to a notice and does not vote in the next two general federal elections (a minimum of four years). 25 Pa.C.S.A. §§ 1901(a)(4), 1901(d)(1). As was true at the time *Flaherty* was decided, the failure to file a removal notice, without more, does not result in cancellation of a voter's registration, and thus no basis exists for a matching address requirement for nominating petitions.

Based upon the foregoing, as well as the stipulation between the parties that the only asserted basis for striking the 461 signatures on Candidate's nominating petition is that the addresses on the nominating petition do not match the address on record in the SURE system for the individual of that name, Objector has not met his burden of proof in this case. For this reason, we entered the order dated April 19, 2016, reversing the order of the Commonwealth Court.

Chief Justice SAYLOR and Justices BAER, TODD, DOUGHERTY and WECHT join the opinion.

17. Accordingly, since July 15, 1995, the provisions contained in the 1937 PRAs permitting cancellation of voter registrations for the failure to file removal notices have remained suspended, and the provisions of Chapter 19 have remained in effect.