**[J-43-2021]**
**IN THE SUPREME COURT OF PENNSYLVANIA**
**EASTERN DISTRICT**


**BAER, C.J., SAYLOR, TODD, DONOHUE, DOUGHERTY, WECHT, MUNDY, JJ.**


| | | |
|---|---|---|
| IN RE: THE NOMINATION PETITIONS OF RANIA MAJOR AS A DEMOCRATIC CANDIDATE FOR MUNICIPAL JUDGE IN PHILADELPHIA COUNTY  OBJECTION OF: TIMOTHY BROOKS AND CAROL BROOKS | : : : : : : : : : : | No. 15 EAP 2021<br><br>Appeal from the order of the Commonwealth Court dated March 26, 2021 at No. 63 MD 2021.<br><br>SUBMITTED: April 1, 2021 |
| APPEAL OF:  RANIA MAJOR | : | |


**OPINION**


**JUSTICE DOUGHERTY**                                                  **DECIDED:  April 8, 2021**

This election matter requires us to revisit our relatively recent holding that the signature of a registered voter "may not be stricken from a nominating petition solely because the address set forth on the nominating petition is different from the address at which the signer is currently registered to vote."  *In re Vodvarka*, 140 A.3d 639, 640 (Pa. 2016).  Following our unanimous decision in *Vodvarka*, the General Assembly in October of 2019 enacted Act 77,[1] which made significant changes to Pennsylvania's Election Code, 25 P.S. §§2600-3591, such as the advent of no-excuse mail-in voting.  One lesser-known change effected by Act 77 was the amendment of 25 P.S. §2868, which requires a signer of a nominating petition to add certain information.  Significantly, only one change was made to the statute by the amendment:  the former requirement that a signer add his "residence" was replaced with a new requirement that he add the "address where he is

---

[1] Act of October 31, 2019, P.L. 552, No. 77.

duly registered and enrolled." 25 P.S. §2868.[2]  After careful review, we conclude this purposeful legislative change in statutory text has displaced our holding in *Vodvarka* pertaining to the address requirement.  More importantly, we conclude the statute as amended plainly and unambiguously imposes a mandatory duty on a signer of a nominating petition to add the address where he or she is duly registered and enrolled, and, further, that the failure to comply with this requirement exposes the signature to viable legal challenge.  As the Commonwealth Court reached this same conclusion below, we affirm.

Few facts are needed to appreciate the discrete legal question we face and, as it so happens, the parties have narrowed them further still by agreeing to a limited number of joint stipulations.  Those stipulations reveal the following.  On March 8, 2021, Rania Major, Esquire ("Candidate") filed a nominating petition for the office of Judge of the Municipal Court of Philadelphia County.  Candidate's petition consisted of 89 pages containing 1,582 lines of signatures of qualified Philadelphia County electors who are registered and enrolled members of the Democratic Party.  On March 15, 2021, Timothy and Carol Brooks ("Objectors") filed in the Commonwealth Court a petition to set aside Candidate's nominating petition, challenging 997 of the 1,582 signature lines for various reasons.  *See* 42 Pa.C.S. §764(1) (granting Commonwealth Court exclusive original jurisdiction over certain contested nominations).

The Honorable Michael H. Wojcik promptly entered a scheduling and case management order requiring the parties to, *inter alia*, review with an operator for the SURE system[3] each and every signature challenged by Objectors.  The parties complied

---

[2] The full text of the statute is produced *infra*.

[3] "The SURE system is the Statewide Uniform Registry of Electors, the statewide database of voter registration maintained by the Department of State and administered by each county." *In re Morrison-Wesley*, 946 A.2d 789, 792 n.4 (Pa. Cmwlth. 2008), *aff'd*,

with Judge Wojcik's order and ultimately "determined that the validity of [C]andidate's nominat[ing] petition should be decided by [the court]'s determination of the validity of 213 line challenges as 'NRA,' not registered at address." Joint Stipulation of Facts at ¶15 (emphasis in original). The parties further stipulated the 213 signature line challenges "do not relate to the qualification of the signers as electors of Philadelphia County, nor do they relate to whether the signers are registered and enrolled members of the Democratic Party." *Id.* at ¶16. Instead, the parties explained, the 213 signature lines at issue were being "challenged **solely** upon the basis that the addresses of those 213 qualified, registered and enrolled electors as stated on the [n]ominating [p]etition pages differ from their addresses as recorded in the [SURE system]." *Id.* at ¶17 (emphasis added).[4] Finally, the parties agreed that "should the NRA objections be overruled, then [C]andidate

---

944 A.2d 78 (Pa. 2008). Among other things, the records maintained by this system include an elector's registered address.

[4] Given this joint and express concession as to the limited nature of the legal issue before the lower court, we deem waived those issues raised by Candidate that do not directly emanate from that single issue litigated below. Pa.R.A.P. 302(a). *Compare* Candidate's Brief at 8-9 (purporting to set forth eight questions for review) *with* Objectors' Brief at 1 (arguing Candidate's proposed questions two, seven, and eight are beyond the scope of this appeal since they were not raised below).

For similar reasons, we deny the Pennsylvania Democratic Party's motion for leave to file an *amicus curiae* brief, in which the putative *amicus* encourages us "to address, even in a summary manner, the unsupported arguments that have been made in this case, and in other cases, that the global pandemic allows prospective candidates to not comply with the petition requirements of the Election Code in the absence of a *per se* or as-applied infirmity under the Constitution." Proposed *Amicus Curiae* Brief at 1. No party in this case has preserved any issue pertaining to the ongoing pandemic, and we reject any invitation to issue an advisory opinion on matters not properly before us.

Finally, all outstanding motions and applications pertaining to Candidate's Jurisdictional Statement, Objectors' Response thereto, the Pennsylvania Democratic Party's Motion for Leave to File *Amicus* Brief and Response, and the Non-Party Philadelphia County Board of Election's Application to Expedite Consideration of Petition, are denied as moot. Candidate's Application to Be Excused from Reproducing the Record is granted.

has met the 1000 signature requirement" of 25 P.S. §2872.1(15)[5] and, conversely, "should the NRA objections be sustained[,] then [C]andidate has failed to meet the minimum 1000 signature requirement[.]" *Id.* at ¶¶18-19.

After entertaining briefing and oral argument on the limited legal issue agreed upon by the parties, Judge Wojcik concluded a plain reading of 25 P.S. §2868 made it "clear that the 213 signature lines on the [n]omination [p]etition are invalid because the electors did not provide the address where he or she 'is duly registered and enrolled' to vote as indicated by the SURE [s]ystem." *In Re: The Nomination Petitions of Rania Major*, 63 M.D. 2021, at 6 (Pa. Cmwlth. Mar. 26, 2021) (Wojcik, J., single judge op.). In so concluding, Judge Wojcik opined that Candidate's reliance on our decision in *Vodvarka* was misplaced, because in that decision we "applied a prior version of [25 P.S. §2868] that did not require, as the current version does, that an elector's address provided on a nomination petition match that which is contained in the SURE [s]ystem." *Id.* at 6 n.5. Judge Wojcik similarly was unpersuaded by Candidate's argument that a ruling in Objectors' favor would lead to an absurd and incongruous result because the legislature failed to issue conforming amendments to another section of the Election Code which requires a circulator of a nominating petition to append a statement certifying that the signers' "respective **residences** are correctly stated therein[.]" 25 P.S. §2869 (emphasis added). Judge Wojcik explained: "Any variance in the language of [the two statutes] does not affect the separate and distinct requirements of [25 P.S. §2868], but merely affects the validity of the circulator's statement as required by [25 P.S. §2869]." *In Re: The Nomination Petitions of Rania Major*, 63 M.D. 2021, at 7 n.5. For these reasons,

---

[5] "Candidates for nomination of offices as listed below shall present a nominating petition containing at least as many valid signatures of registered and enrolled members of the proper party as listed below: . . . Public . . . offices to be filled by a vote of the electors in counties of the first class at large: One thousand." 25 P.S. §2872.1(15).

Judge Wojcik credited Objectors' challenges to the 213 signature lines at issue and, as a result, granted the petition to set aside Candidate's nominating petition.

In the present direct appeal, we review this decision mindful that we may reverse a Commonwealth Court order concerning the validity of challenges to a nominating petition only if the court's findings of fact are not supported by substantial evidence of record, if there was an abuse of discretion, or if there was an error of law. *In re Scroggin*, 237 A.3d 1006, 1017 (Pa. 2020), *citing In re Nomination Petition of Driscoll*, 847 A.2d 44, 49 (Pa. 2004). Moreover, nominating petitions are presumed to be valid and an objector has the burden of proving the petition is invalid. *Driscoll*, 847 A.2d at 49. Along these lines, "this Court has previously observed that the purpose and objective of the Election Code, which contains Act 77, is to obtain freedom of choice, a fair election and an honest election return." *Pa. Democratic Party v. Boockvar*, 238 A.3d 345, 356 (Pa. 2020) (internal quotation and citation omitted), *cert. denied sub nom. Republican Party of Pa. v. Degraffenreid*, 141 S.Ct. 732 (2021). It is also "well-settled that the 'so-called technicalities of the Election Code' must be strictly enforced, 'particularly where . . . they are designed to reduce fraud.'" *In re Scroggin*, 237 A.3d at 1018, *quoting In re Canvass of Absentee Ballots of Nov. 4, 2003 Gen. Election*, 843 A.2d 1223, 1234 (Pa. 2004) ("*Appeal of Pierce*").

Our limited task in this appeal, as framed by the parties' joint stipulations below, is straightforward: We must decide whether the lower court properly interpreted and applied 25 P.S. §2868 as amended by Act 77. This issue of statutory interpretation presents a question of law over which our standard of review is *de novo* and our scope of review is plenary. *Pa. Democratic Party*, 238 A.3d at 355. However, we are guided by well-established interpretive principles, including that where the language of a statute is unambiguous, that language controls. *See* 1 Pa.C.S. §1921(b) ("When the words of a

statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursing its spirit."). Further, while it is established public policy in this Commonwealth to protect the elective franchise, a liberal construction of Code provisions "comes into play only where an election statute is ambiguous." *In re Canvass of Absentee & Mail-In Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d 1058, 1085 n.35 (Pa. 2020) (Wecht, J., concurring and dissenting) (internal quotations, citation, and emphasis omitted), *cert. denied sub nom. Trump v. Degraffenreid*, ___ S.Ct. ___, 2021 WL 666798 (U.S. Feb. 22, 2021); *see also Appeal of Pierce*, 843 A.2d at 1231 ("[A]ll things being equal, the law will be construed liberally in favor of the right to vote but, at the same time, we cannot ignore the clear mandates of the Election Code."). Only where there are at least two reasonable interpretations of the text do we then turn to interpretive principles that govern ambiguous statutes generally, *see* 1 Pa.C.S. §1921(c), and election matters specifically, including the principle that the "Election Code must be liberally construed so as not to deprive an individual of his right to run for office, or the voters of their right to elect a candidate of their choice." *Ross Nomination Petition*, 190 A.2d 719, 720 (Pa. 1963).

As we stated at the start, in *Vodvarka* we held "that the signature of a registered voter whose name appears in the SURE registry may not be stricken from a nominating petition solely because the address set forth on the nominating petition is different from the address at which the signer is currently registered to vote." 140 A.3d at 640 (footnote omitted).[6] Of decisive importance to our disposition in that case was the fact that a signer, at that time, was required to add a "residence" to his or her signature line; aside from that,

---

[6] Candidate also relies on our unanimous decision in *In re Morley*, 141 A.3d 1275 (Pa. 2016). But *Morley*, which was decided a few weeks after *Vodvarka*, announced no new principles of law; it merely concluded *Vodvarka* "is determinative of this appeal." *Morley*, 141 A.3d at 1277. We therefore focus our discussion on *Vodvarka*.

however, we observed there was "no provision [ ] in the Election Code . . . mandat[ing] that the address provided on a nominating petition must match the address in the SURE system." *Id.* at 643.[7] That all changed with the enactment of Act 77. As part of a much larger overhaul of the Election Code, the General Assembly deemed it appropriate to amend 25 P.S. §2868 insofar as it governs the manner of signing nominating petitions. Act 77 included a single change to the statute as follows:

> Each signer of a nomination petition shall sign but one such petition for each office to be filled, and shall declare therein that he is a registered and enrolled member of the party designated in such petition: Provided, however, That where there are to be elected two or more persons to the same office, each signer may sign petitions for as many candidates for such office as, and no more than, he could vote for at the succeeding election. He shall also declare therein that he is a qualified elector of the county therein named, and in case the nomination is not to be made or candidates are not to be elected by the electors of the State at large, of the political district therein named, in which the nomination is to be made or the election is to be held. He shall add his [residence] **address where he is duly registered and enrolled**, giving city, borough or township, with street and number, if any, and shall legibly print his name and add the date of signing, expressed in words or numbers: Provided, however, That if the said political district named in the petition lies wholly within any city, borough or township, or is coextensive with same, it shall not be necessary for any signer of a nomination petition to state therein the city, borough or township of his residence. No nomination petition shall be circulated prior to the thirteenth Tuesday before the primary, and no signature shall be counted unless it bears a date affixed not earlier than the thirteenth Tuesday nor later than the tenth Tuesday prior to the primary.

Section 3 of Act 77 (bracketed text deleted and bolded text added). The nature and timing of this statutory amendment lead to an inescapable conclusion: it was the General

---

[7] Admittedly, our analysis in *Vodvarka* was far more nuanced. However, it is unnecessary for us here to provide a lengthier explanation of our decision to abrogate those prior cases that imposed a matching address requirement in connection with signatures on a nominating petition. *See Vodvarka*, 140 A.3d at 643-651 (discussing reasons for abrogating *In re Nomination Petition of Flaherty*, 770 A.2d 327 (Pa. 2001), *In re Nomination Papers of Nader*, 858 A.2d 1167 (Pa. 2004), and *In re Nomination Petition of Gales*, 54 A.3d 855 (Pa. 2012)). As the General Assembly has since amended 25 P.S. §2868 as it pertains to the address requirement, we essentially write on a blank slate while interpreting this amended statute.

Assembly's intent to legislatively overrule our holding in *Vodvarka* pertaining to a signer's "residence." *Compare Vodvarka*, 140 A.3d at 643 ("Section 2868 of the Election Code does not require the signer of a nominating petition to state the address at which he or she resided at the time of that voter's registration.") *with* 25 P.S. §2868 *as amended* ("Each signer of a nomination petition . . . shall add his address where he is duly registered and enrolled[.]").

Candidate mightily resists this conclusion, positing instead that "Act 77 did not legislatively overrule either *Vodvarka* or *Morley*." Candidate's Brief at 20; *see id.* at 5 ("the holdings in *Vodvarka* and *Morley* remain good law"). But the few proofs she offers in support of her position fall decisively flat.

First, Candidate asserts that a finding of legislative overruling here would be "inconsistent with the ways the General Assembly makes clear that an amendment to a statute is intended to address or [is] in response to a specific holding of [this Court]." *Id.* at 16. In support (though without much elaboration), Candidate points to a handful of instances in which the legislature expressly indicated its intent to alter our case law through the enactment of a statutory amendment. *See id.* at 20*, citing, e.g.*, 42 Pa.C.S. §9799.11(b)(4) (setting forth a declaration of policy, part of which was "to address [this Court's decision] in *Commonwealth v. Muniz*, 164 A.3d 1189 (Pa. 2017)"). Candidate utterly fails, however, to provide any authority to prop up her unstated premise that the legislature is always **required** to explicitly articulate its intent to overrule a judicial decision. To be sure, such pronouncements are a welcome gesture and certainly can make the work of the courts easier; but there is simply no requirement that the General Assembly provide such commentary, which, in any event, would likely be impractical in

many instances.[8]  In short, it ordinarily will fall to the courts to determine when a judicial decision has been legislatively overruled.

Candidate next argues the amendment of 25 P.S. §2868 lacks legal significance because there were no conforming amendments to other parts of the Election Code.  *See id.* at 20-21.  More pointedly, Candidate explains that "while an elector must add his or her 'registered' address to the nominating petition, the circulator of the same nominating petition must certify . . . [that] the signers' respective 'residences' are correctly set forth on the nomination petitions."  *Id.*, *citing* 25 P.S. §2869.[9]  She continues:  "As a result, the conflicting (and absurd) result of reading these two sections of the [E]lection [C]ode together is that the elector must add his **registered** address to any nomination petition he or she signs and the circulator of the same nomination petition must attest that [ ] the signers' respective **residence** addresses are correctly stated on the nomination petition."  *Id.* at 21 (emphasis in original).  Our review reveals this creates neither a "conflict" nor an "absurd" result.

As we recently observed with respect to Act 77 — albeit in the context of a different portion of the Election Code — there are certain references scattered throughout the Code that are nothing more than "overlooked remnants" of prior versions.  *In re Nov. 3, 2020 Gen. Election*, 240 A.3d 591, 610 n.24 (Pa. 2020); *see id.* ("Admittedly, there are some vestiges remaining in the Election Code of the prior, now eliminated, system for

---

[8] This case demonstrates just one reason why it would be unreasonable to expect the legislature to detail its explicit intent to overrule a judicial decision every time it amends a statute.  Notably, Act 77 effected a major reworking of the Election Code, and the amendment to 25 P.S. §2868 was just one small part.  Agreeing upon and detailing the specific intent behind each and every individual component of the Act would have been a massive endeavor — one that could have jeopardized the legislature's ability to pass the bill at all.

[9] This statute requires, in relevant part, that a circulator shall append to each page of  the nominating petition a statement setting forth, *inter alia*, "that [the signers'] respective **residences** are correctly stated therein[.]"  25 P.S. §2869 (emphasis added).

time-of-canvassing ballot challenges."). That Candidate has perhaps identified one such minor remnant in a related provision of the Election Code does not, by itself, negate the clear and explicit registered address requirement newly imposed by the amended version of 25 P.S. §2868. Absent more, which Candidate does not offer, we decline in these circumstances to infer any significance from the absence of a corresponding amendment to 25 P.S. §2869, especially where the latter sets the requirements for nomination petition **circulators**, not **signers**. *See In Re: The Nomination Petitions of Rania Major*, 63 M.D. 2021, at 7 n.5 ("Any variance in the language of [the two statutes] does not affect the separate and distinct requirements of [25 P.S. §2868], but merely affects the validity of the circulator's statement as required by [25 P.S. §2869].").

At this point, all that remains of Candidate's arguments is a patchwork of appeals to policy. *See, e.g.*, Candidate's Brief at 2 ("the result of this 'child's game of 'gotcha' is to allow the 'chosen few' to use the legal process and the technical requirements of Pennsylvania's Election Code to cull the number of candidates"); *id.* at 13 (suggesting a ruling for Objectors would break with "the well-established and understood public policy in this Commonwealth to protect the elective franchise") (internal quotations and citation omitted); *id.* at 19 ("there is no clear policy basis to support a matching address requirement even given Act 77's change to [S]ection 2868"). We reject these arguments for a number of reasons.

Most significantly, Candidate does not contend the amended statutory phrase "address where he is duly registered and enrolled" is ambiguous. Indeed, the meaning of the phrase is plain and unambiguous. As such, the "so-called technicalit[y]" imposed by the statute's requirement that a signer add the address where he or she is duly registered and enrolled "must be strictly enforced[.]" *In re Scroggin*, 237 A.3d at 1018 (internal quotation and citations omitted); *see Appeal of Pierce*, 843 A.2d at 1231 ("we

cannot ignore the clear mandates of the Election Code"); *Pa. Democratic Party*, 238 A.3d at 378 ("Whatever the wisdom of the requirement, the command that the mail-in elector utilize the secrecy envelope and leave it unblemished by identifying information is neither ambiguous nor unreasonable."); *cf. In re Nov. 3, 2020 Gen. Election*, 240 A.3d at 608 ("we decline to read a signature comparison requirement into the plain and unambiguous language of the Election Code").[10]

We also disagree with Candidate's position that there is "no clear policy basis to support a matching address requirement[.]"  Candidate's Brief at 19.  As we recognized long ago, "[t]he provisions of the election laws relating to the form of nominating petitions, and requiring the person circulating them to swear to certain definite things, are necessary to prevent fraud."  *In re Sunday Movie Petition*, 44 A.2d 46, 47 (Pa. 1945) (internal quotations and citation omitted); *see Petition of Cianfrani*, 359 A.2d 383, 384 (Pa. 1976) ("the provisions of the election laws relating to the form of nominating petitions . . . are not mere technicalities but are necessary measures to prevent fraud and to preserve the integrity of the election process"); *see id.* ("the policy of the liberal reading of the Election Code cannot be distorted to emasculate those requirements necessary to assure the probity of the process"); *but see Vodvarka*, 140 A.3d at 643 (opining that "no clear policy basis exists to support a matching address requirement").  And, even if that were not the case — and even if the registered address requirement arguably could "have a disenfranchising effect" — its enactment was permissible "to any extent that steers clear

---

[10] Justice Saylor takes the position that "'mandatory' does not automatically equate to 'uncurable'" and thus distances himself from our analysis "to the extent it may be read to suggest that a non-matching address is a disabling defect that can never be cured." Concurring Opinion at 1-2.  As our learned colleague correctly notes, however, Candidate has never suggested a defect in an elector's signature is subject to potential cure; in fact, she expressly limited the legal issue before us by stipulating to that effect.  *See id.* at 1, *citing* Joint Stipulation of Facts at ¶¶15-18.  Accordingly, this case presents no occasion to consider this matter, and we render no judgment on it.

of constitutional protections." *Canvass of Absentee & Mail-In Ballots of Nov. 3, 2020 Gen. Election*, 241 A.3d at 1082 (Pa. 2020) (Wecht, J., concurring and dissenting); *see Banfield v. Cortes*, 110 A.3d 155, 176-77 (Pa. 2015) ("[T]he state may enact substantial regulation containing reasonable, non-discriminatory restrictions to ensure honest and fair elections that proceed in an orderly and efficient manner."); *Winston v. Moore*, 91 A. 520, 522 (Pa. 1914) ("The power to regulate elections is a legislative one, and has been exercised by the General Assembly since the foundation of the government. . . . This [is] the reason that . . . election laws have always been regarded as peculiarly within the province of the legislative branch[.]").

Having resolved that Act 77 legislatively overruled our holding in *Vodvarka* pertaining to the "residence" of a signer, and having further concluded that the new registered address requirement imposed by the amendment to 25 P.S. §2868 is plain and unambiguous, there is only one other matter that warrants brief discussion: Candidate's assertion, made in passing in an incomplete footnote in her brief before this Court, that the statute's "statement that a voter shall add his or her registered address is not mandatory." Candidate's Brief at 18 n.21.

But Candidate's argument, to the extent it may be understood, is unavailing. First, Candidate arguably has waived it by failing to meaningfully develop it. *See, e.g.*, *Commonwealth v. Johnson*, 985 A.2d 915, 924 (Pa. 2009) ("[W]here an appellate brief fails to provide any discussion of a claim with citation to relevant authority or fails to develop the issue in any other meaningful fashion capable of review, that claim is waived."); *Boniella v. Commonwealth*, 958 A.2d 1069, 1072 n.8 (Pa. Cmwlth. 2008) ("Mere issue spotting without analysis or legal citation to support an assertion precludes our appellate review of [a] matter.") (internal quotations and citation omitted). On its merits, the argument appears to be focused on the statute's language that a signer "shall

**add** his address where he is duly registered and enrolled." Candidate considers the use of the word "add" here — instead of the word "declare" which is used elsewhere in the provision — to somehow minimize the importance of including one's registered address on the nominating petition. *See* Candidate's Brief at 18 n.21 (asserting, without any supporting argumentation, that the word "add" means "'to say further: APPEND'" whereas to "declare" means "'to state emphatically: AFFIRM'"), *quoting* MERRIAM WEBSTER'S DICTIONARY. Whether there is any meaningful difference between the words "add" and "declare" in this context is largely beside the point. Neither term undermines the statute's explicit requirement that a signer provide — either by means of "appending" or "affirming," to use Candidate's preferred dictionary definitions — the address where he or she is duly registered and enrolled, particularly in light of the legislative history discussed above.

Accordingly, we conclude that 25 P.S. §2868, as amended by Act 77, legislatively overruled our holding in *Vodvarka* that an elector's signature may not be stricken from a nominating petition solely because the signer did not use the address at which he or she is registered to vote. We now hold the statute as amended plainly and unambiguously requires the signer to use the address where he or she is duly registered and enrolled, on pain of disqualification of the signature. Because the Commonwealth Court's decision below is in accord with this holding, we affirm its order granting Objectors' petition to set aside Candidate's nomination petition.

Chief Justice Baer and Justices Wecht and Mundy join the opinion.

Justice Saylor files a concurring opinion.

Justice Donohue concurs in the result.

Justice Todd did not participate in the consideration or decision of this matter.