## Stern Nomination Papers

*T. McKeen Chidsey*, Attorney General, and *Raymond C. Miller*, Deputy Attorney General, for Secretary of Commonwealth.

*A. Harry Levitan*, for objectors.

*Philip Stern*, p. p., for nominee.

WOODSIDE, J., July 19, 1948.—This case involves objections made to the nomination paper filed with the Secretary of the Commonwealth to have Philip Stern nominated as the candidate of a political body to be

known as the Progressive Party for the office of representative in Congress from the fifth congressional district of Pennsylvania.

The facts in the case are briefly as follows: On or about April 2, 1948, there was received by and filed with the Secretary of the Commonwealth the above-mentioned nomination paper of Philip Stern. On April 14th James Pasquay, a qualified elector of the fifth congressional district, filed his petition in this court to set aside said nomination paper in accordance with the provisions of the Pennsylvania Election Code of June 3, 1937, P. L. 1333, sec. 977, as amended, 25 PS §2937.

The number of signatures required to place the candidate on the ballot is 1,479. The nomination paper before us contains the signature of 1,570 electors. Therefore if the signatures of 92 or more electors are held invalid the candidate, Philip Stern, will have fewer than the required number of signatures and his nomination paper must be set aside.

Since petitioner abandoned several of his objections at the hearing held on April 16th we will not take up the petition at length but only those objections upon which petitioner presently relies. They are as follows:

(a) One sheet of the nomination paper containing 30 signatures lacks the signature on the affidavit of the qualified elector who circulated the sheet although said affidavit contains the signature and seal of the notary and is otherwise complete.

(b) Two sheets, one containing 35 signatures and the other 46 signatures, do not contain a candidate's name, occupation or place of residence, having only the space for the office sought filled out and that with the word "Congress".

(c) One sheet containing 110 signatures does not state the name of the political body which the candidate represents.

(d) One sheet containing 110 signatures contains the names of only two persons who are to constitute the committee of vacancies should the person nominated withdraw. The law requires that nomination papers shall specify: "The names and addresses of the Committee, not to be less than three nor more than five persons, authorized to fill vacancies if any shall occur": Pennsylvania Election Code, supra, sec. 952(d), as amended, 25 PS §2912.

Petitioner's objection to the sheet containing an affidavit of a qualified elector but lacking his signature is not well taken.

In In re Nomination Papers of Bauman et al., 46 Dauph. 37 (1938), this court permitted the affidavit of a qualified elector to be amended to show the name of the persons who actually circulated the petition when it appeared that the persons who made the original affidavits did not have the requisite knowledge to make same.

In the recent cases of Commonwealth of Pennsylvania ex rel. Gregg v. Morrison, Secretary of the Commonwealth, 59 Dauph. 35 (1948) and Commonwealth of Pennsylvania ex rel. Hirsh v. Morrison, Secretary of the Commonwealth, 59 Dauph. 39 (1948) we did not permit affidavits on nomination petitions to be amended because in both those cases there were no affidavits to be amended, the form being either entirely blank or not attached at all.

In the case now before us there is an executed affidavit lacking only the signature of the affiant which is a proper subject for amendment.

Petitioner's next objection, that two sheets do not contain the candidate's name, occupation or place of residence is a serious one.

Section 952 of the Pennsylvania Election Code (25 PS §2912) provides, inter alia, that:

"All nomination papers shall specify—

(a) the name or appellation of the political body which the candidates nominated thereby represent . . .;

(b) the name of each candidate nominated therein, his profession, business or occupation, if any; and his place of residence with street and number, if any;

(c) the office for which such candidate is nominated; . . ."

We feel that the omission of the candidate's name, occupation and place of residence is a fatal omission not capable of amendment.

In Fitzpatrick v. Lawrence, Secretary of the Commonwealth, 32 D. & C. 486 (1938), Judge Hargest in discussing what type of error on a nominating petition [1] would invalidate the whole petition states:

"In our opinion, a material error would consist of an omission of some matter of vital importance which might mislead either electors or the officials who have duties to perform with reference to nominating petitions, . . ."

The possibilities of fraud that could be perpetrated if blank nomination papers were permitted to be circulated are self-evident. A signer might be told he was signing for a person whom he favored and later the name of another, a stranger or one objectionable to the signer, could be inserted in the blanks.

Respondent argues that the provision of the Election Code cited above which requires the name, occupation and place of residence of the candidate is satisfied if that information appears on any of the sheets making up the nomination paper. He bases this argument on the fact that section 952 does not say each sheet shall specify the party, candidate's name, etc., but only states that: "All nomination papers shall specify" such information.

He further amplifies his contention by pointing out that only the affidavit of a qualified elector is required

---

[1] The same rule applies to a nomination paper.

to be appended to each sheet of the nomination paper: Section 951 (*d*) of the Election Code.

It is true that the Election Code does not specifically state that each "sheet" composing the nominating paper contain the candidate's name, occupation and place of residence, nor do we hold that it is necessary if *at the time it is being circulated* the sheet lacking such information is attached to another sheet containing such information. The information which these sheets lack is not only for the benefit of the officer with whom the paper is filed, but also for the information of the signers of the paper. In this respect it differs from the candidate's affidavit which need not be made more than once on a nomination paper.

Respondent cites the case of Commonwealth ex rel. v. Richmond, 5 Dist. R. 647 (1896), as authority for his contention. In that case it was held that the several sheets composing the nomination paper did not have to contain headings and affidavits so long as such information appeared somewhere on the nomination paper. However, that case was construing the election laws as they existed in 1896 (the Act of June 10, 1893, P. L. 419) which were considerably different from our present Election Code. Furthermore, it is apparent from the statement of Judge Sulzberger at page 650 that at that time even though the nomination paper was composed of several sheets it was the practice to bind them together prior to circulation and therefore a signer received the required information from looking at the first sheet of the paper, for the judge states:

"A different question would have been presented if fraud in the putting together of the papers had been alleged, or if it had been averred that the several pieces of paper were procured to be signed without any writing whatever upon them, or visible to the signer. Then undoubtedly a question might have arisen whether blank papers so covered with names could be said to be *signed* in any proper sense of the term."

Today when the practice is universal to circulate sheets of a nomination petition or paper separately it is folly to argue that each sheet thus circulated does not need a proper heading to inform the signer of that to which he is signing his name.

Therefore, we sustain the petitioner's objection in this respect and find that the 81 signatures appearing on the two sheets not containing the candidate's name, occupation or place of residence are invalidated by that omission and are hereby stricken.

Petitioner's objection that one sheet does not state the name of the political body which the candidate represents raises the same questions that were discussed concerning the previous objection. The possibilities of fraud are just as apparent. An elector might sign thinking he was placing the named candidate on a certain ticket of his choice and later an entirely different political body objectionable to him could be inserted.

Therefore, for the reasons given concerning the previous objection we hold that a nomination paper when presented to an elector for signature must contain the name of the political body which the candidate represents. This being the case the objection is sustained and the 110 signatures appearing on said sheet are invalid and are hereby stricken.

Since the total of signatures stricken, 191, when subtracted from the total of all the signatures on the nomination paper, 1,570, results in a number which is less than the 1,479 signatures required by law to place the name of the candidate on the ballot the nomination paper will be set aside.

Because of our conclusion set forth above it is unnecessary for us to pass upon whether the failure of one of the sheets to name the required number of persons to constitute the committee of vacancy invalidates the signatures on such sheet as to the candidate or only as to the committee of vacancies.

And now, to wit, July 19, 1948, for the reasons set forth above the nomination paper of Philip Stern as a candidate of the Progressive Party for the office of representative in Congress from the fifth congressional district of Pennsylvania is hereby set aside.