# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re:  Nomination Papers of : 
B. DeNeice Welch as a Candidate : 
for Pittsburgh City Council-District 9 : No. 1257 C.D. 2019
: Submitted: September 20, 2019
Appeal of:  Carmen Brown :
:


BEFORE:    HONORABLE RENÉE COHN JUBELIRER, Judge
           HONORABLE P. KEVIN BROBSON, Judge
           HONORABLE PATRICIA A. McCULLOUGH, Judge


OPINION BY
JUDGE COHN JUBELIRER                    FILED:  September 27, 2019


Carmen Brown (Objector) appeals from an Order of the Court of Common Pleas of Allegheny County (trial court) denying her Petition to Set Aside Nomination Papers (Petition) of B. DeNeice Welch (Candidate) who is seeking to appear on the November 2019 Municipal General Election ballot as a candidate for the Office of Councilperson for the Ninth Councilmanic District of Pittsburgh City Council. Objector claims Candidate's act of changing the name of the political body on her Nomination Papers after circulation is a material alteration that, under Section 976 of the Pennsylvania Election Code (Election Code),[1] requires Candidate's Nomination Papers be rejected.  In light of the liberal construction afforded to the Election Code and the nature of the change from "Independent" to "Citizens for Welch," we conclude the alteration was not material in that the signers were, in fact, citizens for Welch.  That is, the signers supported (were for) Candidate's (Welch's)

---

[1] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 2936.

nomination for the office of councilperson. Accordingly, we affirm the trial court's Order.

The facts of this matter are not in dispute. Candidate circulated her Nomination Papers bearing the appellation of "Independent" as the name of the political body in the preamble. Upon presenting her Nomination Papers to the Allegheny County Elections Division (Elections Division), Candidate was advised that another candidate, Randall Taylor, had already filed his nomination papers with the appellation "Independent" as the name of the political body.[2] Pursuant to Section 976 of the Election Code, "[n]o . . . nomination paper . . . shall be permitted to be filed if . . . (g) . . . the appellation set forth therein is identical with or deceptively similar to the words used . . . by any political body which has already filed nomination papers for the same office." 25 P.S. § 2936. A representative at the Elections Division advised Candidate to change the appellation on her Nomination Papers. Candidate then crossed out "Independent" and wrote in "Citizens for Welch" as the name of the political body. The Elections Division accepted Candidate's Nomination Papers bearing the appellation "Citizens for Welch."

Thereafter, Objector filed the Petition with the trial court, seeking to set aside Candidate's Nomination Papers.[3] Therein, Objector alleged Candidate's act of changing the appellation on the Nomination Papers after they were circulated violates Section 976 of the Election Code, which provides a nomination paper shall not be permitted if "it contains material alterations made after signing without the consent of the signers." *Id.* Objector further alleged that the Elections Division

---

[2] Mr. Taylor's nomination papers have been challenged on other grounds, which is the subject of an appeal at docket number 1256 C.D. 2019.

[3] Objector also filed a petition to set aside the nomination papers of Barbara Daniels for identical reasons as those presented here. That matter is subject of an appeal at docket number 1258 C.D. 2019. Objector sought to consolidate these matters, which the Court denied.

should have rejected Candidate's Nomination Papers because they contain an appellation identical to a political body that already filed nomination papers.

A hearing on the Petition was held before the trial court on August 27, 2019, at which time the parties stipulated to the facts being identical to those involving another candidate who likewise changed her nomination papers on the advice of the Elections Division. Candidate explained to the trial court that her intent is to run as an independent candidate. The trial court concluded

> there was no misrepresentation and the result that the . . . [Elections Division] arrived at is that [Candidate] is running as not affiliated with any known or recognized party . . . and in effect, [Candidate] is running as an Independent, but because of the requirement of the straight lever ticket, she was not allowed to use the term Independent.

(Hr'g Tr. at 5.) Accordingly, the trial court issued the Order denying the Petition.

Objector then filed a Notice of Appeal to this Court. On September 11, 2019, the trial court issued a brief opinion in support of its Order. Therein, the trial court recounted the factual and procedural background before stating it "found the evidence to support that no fraud or misrepresentation by . . . Candidate occurred." (Trial Court Opinion at 3.)

Pursuant to this Court's order expediting disposition, Objector and Candidate filed briefs. Objector argues Candidate's alteration of the political body appellation after the Nomination Papers are circulated is a material alteration under the Election Code and that the Elections Division was without statutory authority to permit Candidate to alter the appellation. Objector argues the purpose of the appellation appearing on the nomination papers at the time of circulation is to prevent confusion and deception. Objector does not assert Candidate engaged in fraud, but notes that there is no evidence that the signers understood what they were signing or would

3

consent to the change as required by the Election Code. If alterations such as this were allowed, Objector argues a candidate could circulate nomination papers under one political body's name and after circulation change the political body's name to something with which the signers would not have agreed. In addition, Objector contends the change has practical effects on the Municipal General Election. Because there is a candidate running as an Independent for district attorney, a candidate for another office running under the same political body appellation provides for a straight party option when voting. Objector argues the trial court's use of "independent" in a general sense ignores the term's legal and practical effects.

Candidate responds by reminding the Court that the Election Code is to be liberally construed so that a candidate is not unduly denied the opportunity to run for public office and voters are not deprived of the right to vote for the candidate of their choice. Candidate argues the cases Objector cites in support of setting aside the Nomination Papers are inapposite because there is no potential for deception or confusion here when she changed her appellation from "Independent" to an appellation that contained her own name, "Citizens for Welch." Candidate further argues that, unlike some of the cases, the only issue here is the appellation. Candidate also argues the Elections Division admitted it advised Candidate to change the appellation. Because she reasonably relied upon the Elections Division's erroneous advice, Candidate asserts she should be permitted to amend her Nomination Papers back to "Independent" and because "the other candidate designated as an Independent had not completed filing the necessary signatures for his candidacy, . . . his candidacy was a nullity at that point," and her Nomination Papers should have been accepted. (Candidate's Brief at 4-5.) Finally, Candidate argues she is entitled to attorney's fees because Objector's appeal is frivolous.

4

Section 952 of the Election Code sets the required content of nomination papers, which includes "[t]he name or appellation of the political body which the candidates nominated thereby represent, expressed in not more than three words . . . ." 25 P.S. § 2912. Section 952 further provides that

> no words shall be used in any nomination paper to designate the name or appellation of the political body represented by the candidate's name in such nomination paper which are identical with or deceptively similar to the words used for a like purpose by any political body which has already filed nomination papers for the same office []or which contain part of the name or an abbreviation of the name or part of the name of a political body which has already filed nomination papers for the same office.

*Id.*

This requirement is repeated in Section 976, which provides nomination papers shall not be permitted to be filed if they contain an appellation which is "identical with or deceptively similar to the words used . . . by any political body which has already filed nomination papers for the same office." 25 P.S. § 2936. Additionally, nomination papers cannot be accepted when they contain "material alterations made after signing without the consent of the signers." *Id.* It is these provisions that are at issue in this case.

It is without dispute that Candidate originally sought to file her Nomination Papers with the appellation "Independent." The Elections Division did not accept the filing because another candidate had already filed nomination papers with the same appellation, citing Section 976 of the Election Code. Therefore, the issue is whether Candidate's act of changing the appellation to "Citizens for Welch" after circulation was a "material alteration[] made after signing without the consent of the signers." *Id.* Under these circumstances, we conclude it was not.

5

Preliminarily, the Court is cognizant that the Election Code must "be liberally construed to protect a candidate's right to run for office and the voters' right to elect the candidate of their choice." *In re Vodvarka*, 140 A.3d 639, 641 (Pa. 2016) (citation omitted). We also recognize the Election Code's requirements concerning nominating petitions or nomination papers "are not mere technicalities but are necessary measures to prevent fraud and to preserve the integrity of the election process." *In re Nomination Petition of Cianfrani*, 359 A.2d 383, 384 (Pa. 1976).

At issue is whether the alteration here is "material." In general, an alteration is "material" if it is "[o]f such a nature that knowledge of the item would affect a person's decision-making." Black's Law Dictionary 1066 (9th ed. 2009). More specifically, in the election context, the courts have examined whether the signers could have been misled by the change. For example, in *Jackson v. Fields*, 386 A.2d 533, 534 (Pa. 1978) (per curiam), the Pennsylvania Supreme Court concluded that signers of a nomination petition that erroneously stated the candidate was seeking a seat for the 189th congressional district, which did not exist, instead of the 1st congressional district could not have been misled and it was not a "material error." There was a 189th state assembly district within the 1st Congressional district, but the Court explained that signers of the nomination "petition could not have been misled by said error into thinking that [the candidate] was running for a seat in the [General A]ssembly" instead of the United States Congress given the consistent use of the term "Congress" within the nomination petition. *Id.* at 534.

Similarly, in *Williams v. Cortez* (Pa. Cmwlth., No. 26 M.D. 2016, filed February 9, 2016),[4] the Court granted a candidate's request to compel the

---

[4] *Williams* is a single-judge unreported opinion in an election matter, which, under Section 414(b) of this Court's Internal Operating Procedures, 210 Pa. Code § 69.414(b), may only be cited for its persuasive value and not as binding precedent.

6

Department of State to allow him to amend his nomination papers. Among the defects was the candidate's designation of the name of his political body as "Leon Williams' Education Party," which violated Section 952's prohibition against political body names exceeding three words in length. *Id.*, slip op. at 5. There, the Court noted "that the name of the political body can be a matter of importance to the signers of nomination papers and cannot be changed to a materially different name after voters have signed the nomination papers." *Id.* at 6. Because the candidate sought to amend the name of his political body from "Leon Williams' Education Party" to "Leon's Education Party," which would comply with the three-word limit, the Court concluded amendment was permitted. *Id.* The Court reasoned that removal of one name "could not have any effect on the voters' understanding of the political body name." *Id.*

In contrast, in two trial court opinions, *In re Tumolo Nomination*, 48 Pa. D. & C.2d 134 (1969), and *In re Anastasi Nomination*, 48 Pa. D. & C.2d 143 (1969), cases on which Objector relies, the Court of Common Pleas of Philadelphia County found there was potential for confusion and deception in the alterations with respect to a party appellation and so they were material.[5] In *Tumolo*, an appellation was not included on 9 of the 11 petitions filed by the candidate. At the hearing, the candidate and two other witnesses testified the candidate told some signers that the candidate was "running on his own." 48 Pa. D. & C.2d at 137. However, there was also testimony that the candidate "enjoyed a long association with the Democratic Party" as a committeeman, and candidate for various offices and was "well known among residents." *Id.* The court found that "unless there was a party appellation upon the

---

[5] Although not binding on this Court, decisions by courts of common pleas may be persuasive. *Township of Washington v. Township of Upper Burrell*, 184 A.3d 1083, 1091 n.6 (Pa. Cmwlth. 2018).

7

petitions before they were given to prospective signers, the probability of confusion and deception was present," which "is just what the [Election Code] was intended to prevent." *Id.* Accordingly, the court set aside the candidate's nomination papers. In *Anastasi*, the candidate included the appellation "Independent" on only one of his papers, which he admitted was added at the time of filing of the nomination papers. The candidate testified that he was associated with the Republican Party for a period of four to five years, and also stated he informed almost 99 percent of the signers he was running as an independent. 48 Pa. D. & C.2d at 145. The court did not credit the candidate's testimony and concluded it did "not negate the potential for confusion and deception which is inherent in a petition which lacks a party appellation." *Id.* at 145-46.

The Court of Common Pleas of Dauphin County reached a similar result in *Stern Nomination Papers*, 65 Pa. D. & C. 64 (1948), which Objector also cites. There, an objector challenged the candidate's nomination papers on a number of grounds, including that one sheet did not include the name of the political body the candidate represented. The court there determined the defect was not amendable. *Id.* at 69. The court reasoned that "[a]n elector might sign thinking he was placing the named candidate on a certain ticket of his choice and later an entirely different political body objectionable to him could be inserted." *Id.* Therefore, the objection related to appellation was sustained. *Id.*

The cases interpreting whether an alteration to the appellation on Nomination Papers is material have, thus, examined whether the signers would be misled by the change, and the possibility for confusion or deception. We agree with Candidate that *Tumolo* and *Anastasi* are distinguishable because those candidates had longstanding associations with a major political party, which could readily result in

8

confusion by the signers, who may still associate those candidates with those parties, particularly when they did not include any appellation reflecting the name of a political body on their nomination papers. That is not the case here. Nor are we persuaded by *Stern* because here, Candidate did not change the name of the political body to something entirely different which signers would find objectionable. Candidate changed "Independent" to "Citizens for Welch." This alteration is more akin to the alteration in *Williams*, which changed the appellation from "Leon Williams' Education Party" to "Leon's Education Party." The individuals who signed Candidate's Nomination Papers undoubtedly supported Candidate, as evidenced by their signing. We, therefore, cannot say the change from "Independent" to "Citizens for Welch" would have affected the signers' decision to sign the Nomination Papers.

Objector argues allowing a candidate to alter the appellation after circulation could result in a candidate changing the political body name to something with which the signers disagree, and we agree that is a possibility. However, these matters are fact-specific, and under the facts presented here, the change was not material. Here, the change is consistent with their signing her Nomination Papers; the signers support (or are "for") Candidate (Welch).

Accordingly, the trial court's Order denying the Petition is affirmed.[6]

_____

**RENÉE COHN JUBELIRER**, Judge

---

[6] Given our disposition, we need not address Candidate's other arguments. In addition, we deny Candidate's request for attorney's fees, as Objector's appeal was not frivolous.

9

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Nomination Papers of      :
B. DeNeice Welch as a Candidate     :
for Pittsburgh City Council-District 9   :    No. 1257 C.D. 2019
                                    :
Appeal of: Carmen Brown          :
                                    :

# **O R D E R**

**NOW**, September 27, 2019, the Order of the Court of Common Pleas of Allegheny County, dated August 27, 2019, is **AFFIRMED.**

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Nomination Papers of     :
B. DeNeice Welch as a Candidate   :
for Pittsburgh City Council-District 9  :   No. 1257 C.D. 2019
                                 :   Submitted: September 20, 2019
Appeal of: Carmen Brown        :


BEFORE:  HONORABLE RENÉE COHN JUBELIRER, Judge
               HONORABLE P. KEVIN BROBSON, Judge
               HONORABLE PATRICIA A. McCULLOUGH, Judge


CONCURRING OPINION
BY JUDGE BROBSON               FILED:  September 27, 2019


Given the limited issues and argument on appeal in this case, I must agree with the majority's disposition of this appeal. The only issue on appeal appears to be whether the alteration to the political body appellation on the nomination papers of B. DeNeice Welch (Candidate) in this matter was a material alteration prohibited by the Pennsylvania Election Code (Code),[1] specifically Section 976.[2] I agree with the majority that it was not. I, therefore, concur with the majority's decision to affirm the Order of the Court of Common Pleas of Allegheny County (trial court).

I write separately only to observe that under the Code, *no* candidate can appear on the ballot as a lowercase-"i" independent, as that term is generally understood in the context of elections. The trial court rightly observed below that the collective intent of the electors in this matter who signed Candidate's nomination

---

[1] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3554.

[2] 25 P.S. § 2936.

papers was to place a truly independent candidate on the municipal election ballot—*i.e.*, a candidate not affiliated with a political party *or* a political body. The Code, however, only permits candidates to secure a ballot position either through the primary election process, as a political party candidate, or through the filing of nomination papers, as a political body candidate. For whatever reason, the truly unaffiliated candidate and the electors who wish to support the truly unaffiliated candidate have no clear path under the Code. Instead, they *must* affiliate under the banner of at least a political body, which the Code defines loosely as something less than a political party.[3]

If we are to honor this system chosen by our General Assembly, then we should not allow potential candidates to designate a political body appellation on nomination papers that misleads voters into believing that the candidate is unaffiliated with a political party or political body—*i.e.*, the generally recognized and understood meaning of a truly independent candidate. When it comes to the nomination papers process under the Code, there simply is no such thing. Every candidate must be affiliated with a political body and that political body must be identified by name in such a way as not to confuse or mislead voters. By allowing the first-filed candidate to claim the appellation "Independent," while rejecting the same appellation from subsequent candidates, the Allegheny County Elections Division (Elections Division) has, in my assessment, conferred a benefit on the first candidate that is not permitted under the Code—that being the perception of running as an unaffiliated candidate.

Accordingly, the Elections Division should have rejected, under Section 976 of the Code, every candidate's nomination papers with a political body

---

[3] Sections 102 and 801 of the Code, 25 P.S. §§ 2602, 2831.

PKB - 2

appellation of "Independent" as containing "a material error or defect apparent on the face thereof," that being the failure to identify a *political body* by name that does not mislead voters.


                                        _____
                                          P. KEVIN BROBSON, Judge