# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Nomination Papers of     :
Barbara Daniels as a Candidate     :
for Pittsburgh City Council-District 9     :    No. 1258 C.D. 2019
          :    Submitted: September 20, 2019
Appeal of: Carmen Brown     :
          :


BEFORE:     HONORABLE RENÉE COHN JUBELIRER, Judge
            HONORABLE P. KEVIN BROBSON, Judge
            HONORABLE PATRICIA A. McCULLOUGH, Judge


**OPINION BY**
**JUDGE COHN JUBELIRER**             **FILED: September 27, 2019**


Carmen Brown (Objector) appeals from an Order of the Court of Common Pleas of Allegheny County (trial court) denying her Petition to Set Aside Nomination Papers (Petition) of Barbara Daniels (Candidate) who is seeking to appear on the November 2019 Municipal General Election ballot as a candidate for the Office of Councilperson for the Ninth Councilmanic District of Pittsburgh City Council. Objector claims Candidate's act of changing the name of the political body on her Nomination Papers after circulation is a material alteration that, under Section 976 of the Pennsylvania Election Code (Election Code),[1] requires Candidate's Nomination Papers be rejected. Under the specific facts of this case, we are constrained to agree, but permit Candidate to amend her Nomination Papers to cure the material defect.

The parties do not dispute the following relevant facts. Candidate circulated her Nomination Papers bearing the appellation of "Independent" as the name of the

---

[1] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. § 2936.

political body in the preamble. Upon presenting her Nomination Papers to the Allegheny County Elections Division (Elections Division), Candidate was advised that another candidate, Randall Taylor, had already filed his nomination papers with the appellation "Independent" as the name of the political body.[2] Pursuant to Section 976 of the Election Code, when any nomination papers are presented for filing that contain an appellation "identical with or deceptively similar to the words used . . . by any political body, which has already filed nomination papers for the same office," the nomination papers should not be permitted. 25 P.S. § 2936. A representative at the Elections Division advised Candidate to change the appellation. Candidate then crossed out "Independent" and wrote in "Campaign of Compassion" as the name of the political body. The Elections Division accepted Candidate's Nomination Papers bearing the appellation "Campaign of Compassion."

Thereafter, Objector filed the Petition with the trial court, seeking to set aside Candidate's Nomination Papers.[3] Therein, Objector alleged Candidate's act of changing the appellation on the Nomination Papers after they were circulated violates Section 976 of the Election Code, which provides a nomination paper shall not be permitted if "it contains material alterations made after signing without the consent of the signers." *Id.* Objector further alleges that the Elections Division should have rejected Candidate's Nomination Papers because they contain an appellation identical to a political body that had already filed nomination papers.

A hearing on the Petition was held before the trial court on August 27, 2019. At the hearing, the Elections Division's manager (Manager) testified he was present

---

[2] Mr. Taylor's nomination papers have been challenged on other grounds, which is the subject of an appeal at docket number 1256 C.D. 2019.

[3] Objector also filed a petition to set aside the nomination papers of B. DeNeice Welch for identical reasons as those presented here. That matter is subject of an appeal at docket number 1257 C.D. 2019. Objector sought to consolidate these matters, which the Court denied.

when Candidate attempted to file her Nomination Papers, and he requested Candidate change the name of the political body because another candidate had already filed nomination papers as "Independent." Manager explained his reasoning for requesting the change was "[s]trictly the straight party," referring to the ability to vote on a straight party ticket for candidates of one political party or body. (Hr'g Tr. at 15.) Counsel for the Elections Division added that to the extent there was an error, the error was by the Elections Division and "should not be taken out" on Candidate. (*Id.* at 16-17.) Counsel for Objector responded that the remedy would be to return Candidate to the position she would have been in without the incorrect advice, which would have been as an Independent. And, because someone had already filed as an Independent, Objector's counsel argued the result would be the same: Candidate's Nomination Papers would have been rejected. Candidate, appearing pro se, argued removing her from the ballot "would be a great inequality" and potentially could lead to corruption as candidates race to be the first to turn in their nomination papers. (*Id.* at 18.)

The trial court concluded there was no misrepresentation by Candidate and "[t]hat the signers, the electors who signed [Candidate's] nominating papers did so in an effort to place an Independent candidate, using the terms generically, a non-affiliated candidate, if you will, on the ballot to challenge the democratic candidate, and that is what happened." (*Id.* at 19.) Accordingly, the trial court issued the Order denying the Petition.

Objector then filed a Notice of Appeal to this Court. On September 11, 2019, the trial court issued a brief opinion in support of its Order. Therein, the trial court recounted the factual and procedural background before stating it "found the

3

evidence to support that no fraud or misrepresentation by . . . Candidate occurred." (Trial Court Opinion at 3.)

Pursuant to this Court's order expediting disposition, the parties were directed to file briefs. Objector filed a brief; Candidate did not. On appeal, Objector argues Candidate's alteration of the political body appellation after the Nomination Papers are circulated is a material alteration under the Election Code and that the Elections Division was without statutory authority to permit Candidate to alter the appellation. Objector argues the purpose of the appellation appearing on the nomination papers at the time of circulation is to prevent confusion and deception. Objector does not assert Candidate engaged in fraud, but notes that there is no evidence that the signers understood what they were signing or would consent to the change as required by the Election Code. If alterations such as this were allowed, Objector argues a candidate could circulate nomination papers under one political body's name and after circulation change the political body's name to something with which the signers would not have agreed. In addition, Objector argues the change has practical effects on the Municipal General Election. Because there is a candidate running as an Independent for district attorney, a candidate for another office running under the same political body appellation provides for a straight party option when voting. Objector argues the trial court's use of "independent" in a general sense ignores the term's legal and practical effects.

Section 952 of the Election Code sets the required content of nomination papers, which includes "[t]he name or appellation of the political body which the candidates nominated thereby represent, expressed in not more than three words . . . ." 25 P.S. § 2912. Section 952 further provides that

> no words shall be used in any nomination paper to designate the name
> or appellation of the political body represented by the candidate's name

4

in such nomination paper which are identical with or deceptively similar to the words used for a like purpose by any political body which has already filed nomination papers for the same office []or which contain part of the name or an abbreviation of the name or part of the name of a political body which has already filed nomination papers for the same office.

*Id.*

This requirement is repeated in Section 976, which provides nomination papers shall not be permitted to be filed if they contain an appellation which is "identical with or deceptively similar to the words used . . . by any political body which has already filed nomination papers for the same office." 25 P.S. § 2936. Additionally, nomination papers cannot be accepted when they contain "material alterations made after signing without the consent of the signers." *Id.* It is these provisions that are at issue in this case.

It is without dispute that Candidate originally sought to file her Nomination Papers with the appellation "Independent." The Elections Division did not accept the filing because another candidate had already filed nomination papers with the same appellation, citing Section 976 of the Election Code. Before us, the issue is whether Candidate's act of changing the appellation to "Campaign of Compassion" after circulation was a "material alteration[] made after signing without the consent of the signers." *Id.* Given the purpose behind the requirement and the legal and practical effects of permitting such a change under these circumstances, we are constrained to conclude the alteration here was material.

It is well settled that the Election Code "be liberally construed to protect a candidate's right to run for office and the voters' right to elect the candidate of their choice." *In re Vodvarka*, 140 A.3d 639, 641 (Pa. 2016) (citation omitted). It is also well established that the Election Code's requirements concerning nominating petitions or nomination papers "are not mere technicalities but are necessary

5

measures to prevent fraud and to preserve the integrity of the election process." *In re Nomination Petition of Cianfrani*, 359 A.2d 383, 384 (Pa. 1976).

In *In re: Nomination Papers of Welch* (Pa. Cmwlth., No. 1257 C.D. 2019, filed September 27, 2019), which involves Objector's challenge to the nomination papers of another candidate on similar grounds that the candidate changed the appellation after the candidate's nomination papers were circulated, we examined what materiality means:

> In general, an alteration is "material" if it is "[o]f such a nature that knowledge of the item would affect a person's decision-making." Black's Law Dictionary 1066 (9th ed. 2009). More specifically, in the election context, the courts have examined whether the signers could have been misled by the change. For example, in *Jackson v. Fields*, 386 A.2d 533, 534 (Pa. 1978) (per curiam), the Pennsylvania Supreme Court concluded that signers of a nomination petition that erroneously stated the candidate was seeking a seat for the 189th congressional district, which did not exist, instead of the 1st congressional district could not have been misled and it was not a "material error." There was a 189th state assembly district within the 1st Congressional district, but the Court explained that signers of the nomination "petition could not have been misled by said error into thinking that [the candidate] was running for a seat in the [General A]ssembly" instead of the United States Congress given the consistent use of the term "Congress" within the nomination petition. *Id.* at 534.

> Similarly, in *Williams v. Cortez* (Pa. Cmwlth., No. 26 M.D. 2016, filed February 9, 2016),[] the Court granted a candidate's request to compel the Department of State to allow him to amend his nomination papers. Among the defects was the candidate's designation of the name of his political body as "Leon Williams' Education Party," which violated Section 952's prohibition against political body names exceeding three words in length. *Id.*, slip op. at 5. There, the Court noted "that the name of the political body can be a matter of importance to the signers of nomination papers and cannot be changed to a materially different name after voters have signed the nomination papers." *Id.* at 6. Because the candidate sought to amend the name of his political body from "Leon Williams' Education Party" to "Leon's Education Party," which would comply with the three-word limit, the Court concluded

6

amendment was permitted. *Id.* The Court reasoned that removal of one name "could not have any effect on the voters' understanding of the political body name." *Id.*

In contrast, in two trial court opinions, *In re Tumolo Nomination*, 48 Pa. D. & C.2d 134 (1969), and *In re Anastasi Nomination*, 48 Pa. D. & C.2d 143 (1969), cases on which Objector relies, the Court of Common Pleas of Philadelphia County found there was potential for confusion and deception in the alterations with respect to a party appellation and so they were material.[] In *Tumolo*, an appellation was not included on 9 of the 11 petitions filed by the candidate. At the hearing, the candidate and two other witnesses testified the candidate told some signers that the candidate was "running on his own." 48 Pa. D. & C.2d at 137. However, there was also testimony that the candidate "enjoyed a long association with the Democratic Party" as a committeeman, and candidate for various offices and was "well known among residents." *Id.* The court found that "unless there was a party appellation upon the petitions before they were given to prospective signers, the probability of confusion and deception was present," which "is just what the [Election Code] was intended to prevent." *Id.* Accordingly, the court set aside the candidate's nomination papers. In *Anastasi*, the candidate included the appellation "Independent" on only one of his papers, which he admitted was added at the time of filing of the nomination papers. The candidate testified that he was associated with the Republican Party for a period of four to five years, and also stated he informed almost 99 percent of the signers he was running as an independent. 48 Pa. D. & C.2d at 145. The court did not credit the candidate's testimony and concluded it did "not negate the potential for confusion and deception which is inherent in a petition which lacks a party appellation." *Id.* at 145-46.

The Court of Common Pleas of Dauphin County reached a similar result in *Stern Nomination Papers*, 65 Pa. D. & C. 64 (1948), which Objector also cites. There, an objector challenged the candidate's nomination papers on a number of grounds, including that one sheet did not include the name of the political body the candidate represented. The court there determined the defect was not amendable. *Id.* at 69. The court reasoned that "[a]n elector might sign thinking he was placing the named candidate on a certain ticket of his choice and later an entirely different political body objectionable to him could be inserted." *Id.* Therefore, the objection related to appellation was sustained. *Id.*

*Welch*, slip op. at 6-8 (internal footnotes omitted).

7

As we stated in *Welch*, "[t]he cases interpreting whether an alteration to the appellation on Nomination Papers is material have, thus, examined whether the signers would be misled by the change, and the possibility for confusion or deception." *Id.* at 8. Unlike in *Welch*, though, where we held a change from "Independent" to "Citizens for Welch" was not a material change because such an alteration would not have affected the signers' decision to sign the nomination papers, *id.* at 8-9, we cannot reach the same conclusion here. Candidate did not simply change the name of the political body from "Independent" to a neutral name that unmistakably connected the political body to Candidate, such as the candidates in *Welch* or *Williams*. Candidate changed it from "Independent" to "Campaign of Compassion." We understand that there are signers that may not object to the alteration Candidate made. However, permitting candidates the unfettered ability to completely change the name of their political bodies after their nomination papers have been circulated to something that bears no obvious relationship to either the originally circulated political body name or the candidate, without any evidence that signers consent to such a change, invites confusion or potential deception. It can also place the courts in the untenable position of making judgment calls as to which political body appellations signers may object.

While we understand the trial court's view that signers understood Candidate was running in the generic sense as an "independent," meaning she was not affiliated with a political party, under the law in Pennsylvania, the appellation of a political body on nomination papers is not simply a declaration that the candidate disassociates with a major political party. The appellation set forth on nomination papers designates a particular political body under which the candidate will appear on the ballot and, by virtue of their signing, with whom the signers are therefore

8

connected. As we stated in *Williams*, "the name of the political body can be a matter of importance to the signers. . . ." *Id.*, slip op. at 6. Because the name "Campaign of Compassion" is ambiguous and indefinite, and not connected to either the Candidate or the appellation on the Nomination Papers when they were circulated, we cannot conclude, as we did in *Welch* or *Williams*, that the alteration is not material. Finding that the alteration is material, we must reverse the trial court's Order.

The inquiry then becomes whether Candidate should be permitted an opportunity to amend the appellation. Given the unique facts in this case, and bearing in mind the liberal construction of the Election Code towards allowing a candidate's name to appear on the ballot, *In re Vodvarka*, 140 A.3d at 641, we hold she may. Under Section 977 of the Election Code, "[i]f the objections relate to material errors or defects apparent on the face of the nomination petition or paper, the court, after hearing, may in its discretion, permit amendments within such time . . . as the said court may specify." 25 P.S. § 2937. Here, the Nomination Papers contained a material defect on their face in that the original appellation was crossed out, at the Elections Division's suggestion,[4] and replaced with a new appellation. Unfortunately, as explained above, the new appellation Candidate chose could lead to confusion. There is no evidence, though, that Candidate sought to deceive voters with the change. The Pennsylvania Supreme Court has held that amendment is permitted so long as the defect is not the result of a candidate's intent to mislead electors. *In re Nomination Petition of Beyer*, 115 A.3d 835, 836 (Pa. 2015). Thus, we remand this matter to allow Candidate the opportunity to amend the appellation on her Nomination Papers to a political body name that keeps with the intent of the

---

[4] The Elections Division advised Candidate to change the appellation but did not suggest a name of the political body.

9

electors who signed Candidate's Nomination Papers. Given the time constraints associated with all election appeals, Candidate shall file amended Nomination Papers by no later than the close of business on October 2, 2019, and the failure to file amended Nomination Papers shall result in Candidate's Nomination Papers being set aside.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Nomination Papers of      :
Barbara Daniels as a Candidate      :
for Pittsburgh City Council-District 9    :    No. 1258 C.D. 2019
     :
Appeal of: Carmen Brown      :
     :

# **O R D E R**

**NOW**, September 27, 2019, the Order of the Court of Common Pleas of Allegheny County (trial court), dated August 27, 2019, is **REVERSED** and **REMANDED**. Upon remand, the trial court shall permit Barbara Daniels (Candidate) the opportunity to amend the appellation on her Nomination Papers for the Office of Councilperson for the Ninth Councilmanic District of Pittsburgh City Council in the 2019 Municipal General Election. Amended Nomination Papers shall be filed by no later than the close of business on October 2, 2019. Failure to promptly file amended Nomination Papers shall result in Candidate's original Nomination Papers being set aside. Any objections to the Amended Nomination Papers shall be filed within five (5) days of the date the Amended Nomination Papers are filed.

Jurisdiction relinquished.

_____
**RENÉE COHN JUBELIRER,** Judge

# IN THE COMMONWEALTH COURT OF PENNSYLVANIA

In Re: Nomination Papers of : 
Barbara Daniels as a Candidate : 
for Pittsburgh City Council-District 9 : No. 1258 C.D. 2019
 : Submitted: September 20, 2019
Appeal of: Carmen Brown :

BEFORE:  HONORABLE RENÉE COHN JUBELIRER, Judge
 HONORABLE P. KEVIN BROBSON, Judge
 HONORABLE PATRICIA A. McCULLOUGH, Judge

**CONCURRING OPINION**
**BY JUDGE BROBSON** **FILED:  September 27, 2019**

Given the limited issues and argument on appeal in this case, I must agree with the majority's conclusion that the alteration to the political body appellation on the nomination papers of Barbara Daniels (Candidate) in this matter was a material alteration prohibited by the Pennsylvania Election Code (Code),[1] specifically Section 976,[2] but that amendment of Candidate's nomination papers under these circumstances is permissible under Section 977 of the Code.[3] Nonetheless, I note, for the reasons set forth in my concurring opinion in *In re: Nomination Papers of Welch* (Pa. Cmwlth., No. 1257 C.D. 2019, filed September 27, 2019), my view is that the single word "Independent" is a misleading

---

[1] Act of June 3, 1937, P.L. 1333, *as amended*, 25 P.S. §§ 2600-3554.

[2] 25 P.S. § 2936.

[3] 25 P.S. § 2937.

and improper political body appellation that should be rejected under Section 976 of the Code.

 

_____

P. KEVIN BROBSON, Judge
